**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

**In The United States District Court**
**For The Eastern District of Arkansas**

JUN 2 5 2019

JAMES W. McCORMACK, CLERK
By:_____
                              DEP CLERK

ANIMAL LEGAL DEFENSE FUND;
ANIMAL EQUALITY; CENTER FOR
BIOLOGICAL DIVERSITY; and FOOD
CHAIN WORKERS ALLIANCE

    *Plaintiffs,*

    v.

JONATHAN and DeANN VAUGHT, doing
business as Prayer Creek Farm, and PECO
FOODS, INC.

    *Defendants.*

Case No.: 4:19-cv-442-JM

**COMPLAINT FOR**
**DECLARATORY AND**
**INJUNCTIVE RELIEF**

This case assigned to District Judge _Moody_
and to Magistrate Judge _Volpe_

## I.    INTRODUCTION

    1.    Animal Legal Defense Fund ("ALDF"), Animal Equality ("AE"), Center for Biological Diversity ("CBD"), and Food Chain Workers' Alliance ("FCWA") (collectively "Plaintiffs") are nonprofit organizations dedicated to reforming industrial animal agriculture and protecting the people, animals, and environment that suffer due to the industrialization of our food production system. When corporations trap massive numbers of animals in factory farms and process them through high-speed, dangerous slaughterhouses, all to enrich themselves and their shareholders, they cause irremediable harms to workers, rural communities, the environment, and the animals. However, the industry has been able to propagate by hiding its production methods.

    2.    Employment-based undercover investigations of industrial agricultural facilities, which provide the public information about this secretive industry, have proven some of the only means to demonstrate the truth about how it functions and reform its practices. The information

1

investigations produce has contributed to criminal prosecutions for animal cruelty, worker organizing campaigns, shareholder resolutions to reform corporate conduct, and, just this month, led a major milk company to alter its supply lines, change its audit practices, and amend its education programs.[1] Exposés of our food production system date back to Upton Sinclair's *The Jungle*, which brought about the enactment of the Federal Meat Inspection Act and the Pure Food and Drug Act. Today, they continue to inform policymaking, alter consumer purchasing, and reform manufacturing processes. They are an essential part of the marketplace of ideas.

3.      So that Plaintiffs can continue to engage in that advocacy, Plaintiffs seek declaratory and injunctive relief to stop the threat that Defendants will enforce Arkansas Code § 16-118-113 (the "Arkansas Ag-Gag law") in violation of the United States Constitution, particularly the First Amendment and Equal Protection Clause.

4.      The Arkansas Ag-Gag law is part of the nationwide effort by the American Legislative Exchange Council, U.S. Chamber of Commerce, Farm Bureau and other political organizations—whose focus is on protecting corporate profits by shielding companies from needed accountability—to suppress speech through penalizing investigations meant to reveal the animal agriculture industry's illegal and unethical conduct to the public.

5.      With Ag-Gag laws having been successfully challenged as unconstitutional in Idaho, Utah, Wyoming and Iowa, and ongoing challenges in North Carolina, Kansas and Iowa, the corporate lobbyists who designed the Arkansas law tried to prevent judicial review of the statute. They crafted it to create extreme civil penalties that can be enforced by factory farms and industrial slaughterhouses against investigators (thereby chilling their speech) while—the

---

[1] *See, e.g.*, *Fairlife Statement on Animal Care*, Fairlife (June 12, 2019), https://fairlife.com/news/fairlife-statement-regarding-arm-video/.

industry's representatives believed—preventing advocates from identifying proper defendants to challenge the law in court (thereby keeping the chill in place).

6.     However, Plaintiffs have specific and definite plans to investigate Prayer Creek Farm and Peco Foods, Inc.'s Arkansas facilities so they can use that information to challenge the animal cruelty, harm to workers, and environmental catastrophes these operations are causing in the state. Prayer Creek Farm is owned and operated by Jonathan Vaught and Representative DeAnn Vaught, who was lead sponsor of the Arkansas Ag-Gag law. They refused to waive their rights under the law. Peco Foods is a major industrial chicken producer that expanded its operations in Arkansas in parallel to the development of the Ag-Gag law.[2] Peco Foods has been accused of conspiring with other industry players to benefit from their collective power to manipulate information, Third Amended And Consolidated Class Action Complaint, *In re Broiler Chicken Antitrust Litigation*, No. 1:16-cv-08637 (N.D. Ill.); it also refused to waive its rights under the Ag-Gag law.

7.     The threat of penalty under Arkansas' Ag-Gag law is keeping Plaintiffs from investigating Defendants' facilities in Arkansas and engaging in advocacy based on the information those investigations would reveal. Therefore, there is an active dispute between Plaintiffs and the Vaughts, doing business as Prayer Creek Farm, and Peco Foods, requiring the Court to declare the Arkansas Ag-Gag law unconstitutional and enjoin these Defendants from using it so it will no longer suppress Plaintiffs' speech.

---

[2] Justin Lewis, *Poultry Processor Investing $165 Million, 1,000 Jobs Coming to Arkansas*, KATV (Sept. 10, 2015), https://katv.com/archive/poultry-processor-investing-165-million-1000-jobs-coming-to-arkansas.

## II.    SUMMARY

8.      Plaintiffs provide accurate information to the public regarding industrial animal agriculture's horrific methods through engaging in and utilizing the results of undercover investigations of industrial animal agriculture facilities.

9.      These investigations are typically employment-based. Plaintiffs ALDF and AE employ and contract with investigators to carry out investigations pursuant to their instructions. Investigators seek out employment opportunities at factory farms and slaughterhouses, apply for and obtain a job through the usual channels, using their real identities—merely concealing their true journalistic or investigative motives for seeking employment, as well as their associations with Plaintiffs. Once employed, the investigators document activities in the facility while performing, in good faith, the lawful tasks required of them, with the goal of ultimately revealing to the public the entities' otherwise secret unlawful or unethical operations.

10.     In the past two decades, journalists and advocates have conducted more than 100 undercover investigations at factory farms and slaughterhouses in the United States, exposing terrible health and safety violations, animal suffering and environmental contamination, and forcing prosecutions, food safety recalls, citations and closures. The investigations have also generated countless news stories.

11.     A 2012 consumer survey conducted by Purdue University found that the public relies on the information gathered through undercover investigations of agricultural facilities more than it relies on information from industry groups and the government combined.

12.     The ability to engage in investigations of animal agriculture facilities and the resulting advocacy in Arkansas is particularly important.

13.     Arkansas is the home of both the world's largest food retailer, Walmart, and the country's largest poultry and meat processor, Tyson Foods. Meat-producing giants Butterball, Cargill, Mountaire, Peco Foods, Pilgrim's Pride, Perdue Farms, and Wayne Farms all have locations (often many) in Arkansas. The state is the second largest producer of broiler chickens (chickens raised for meat) and has the twelfth largest population of cows raised for beef in the United States. Its pig population grew by approximately 20% between 2012 and 2017 and, as of 2018, pigs outnumbered the population of every Arkansas city except Little Rock (and they were not far behind Little Rock).

14.     Further, the state government has shown itself to be unusually deferential to industrial animal agriculture companies. It recently passed, in only five days, legislation to limit the ability of people to *comment* on factory farm permits.

15.     Federal regulation is also lax in Arkansas. The federal Farm Service Agency and Small Business Administration, the two federal agricultural lending agencies, have failed to respond to a 2017 petition submitted by Plaintiffs ALDF and CBD asking the agencies to comply with federal law when issuing loans that are fueling the rapid expansion of industrial agriculture in northeastern Arkansas.

16.     The United States Department of Agriculture ("USDA") has also provided Peco Foods' Pocahontas slaughter facility a special exemption to run its poultry slaughter lines at faster speeds than the typical poultry slaughterhouse, increasing the risks of worker injuries (a worker suffered an amputation immediately after the line speed increase), food contamination, and animal suffering, including animals being slaughtered alive and otherwise dying excessively painful deaths, rather than being properly slaughtered.

17.     The undercover investigations of Arkansas animal agriculture facilities that occurred in the state prior to the Ag-Gag law being passed document extreme cruelty. In 2006, People for the Ethical Treatment of Animals engaged in an employment-based undercover investigation of the Butterball turkey slaughterhouse in Ozark, Arkansas. That investigator documented workers encouraging one another to "jump on [the turkey's] stomachs" so "their insides will come out of their [rectums]." The investigator also saw a worker inserting his finger into a turkey's vagina.[3]

18.     In 2015, Last Chance for Animals conducted an undercover investigation in Rogers, Arkansas of Pel-Freez Arkansas, LLC, the nation's largest rabbit slaughterhouse. The group's investigator, who worked in the plant as a blood catcher, collecting rabbit blood for medical research, documented a vicious slaughter process. Workers beat rabbits on their heads with the dull edge of a knife in a crude attempt to stun them, then broke the animals' hind legs to clamp the twitching rabbits into shackles. Workers finally decapitated the rabbits, often with a dull knife that prolonged the slaughter process and caused the rabbits to scream in pain.

19.     The Arkansas Ag-Gag law, which Plaintiffs challenge here, was passed to suppress undercover investigations at agricultural facilities and evade the courts' ability to alleviate that unconstitutional thwarting of speech.

20.     As noted above, the Arkansas Ag-Gag law is the culmination of a years-long campaign by industrial animal agriculture against investigations, to silence the resulting public disclosures of truthful information about the industry's practices.

21.     Ag-Gag laws have universally been struck down as violating the First Amendment. *Animal Legal Def. Fund v. Reynolds*, 353 F.Supp.3d 812 (S.D. Iowa 2019); *W.*

---

[3] *Butterball's House of Horrors: A PETA Undercover Investigation*, People for the Ethical Treatment of Animals, https://www.peta.org/features/butterball-peta-investigation/.

*Watersheds Project v. Michael*, 353 F.Supp.3d 1176 (D. Wyo. 2018); *Animal Legal Def. Fund v. Herbert*, 263 F.Supp.3d 1193 (D. Utah 2017); *Animal Legal Def. Fund v. Otter*, 118 F.Supp.3d 1195 (D. Idaho 2015), *aff'd in part, rev'd in part sub nom. Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184 (9th Cir. 2018).

22.     Yet, undeterred, industrial agriculture companies, their lobbyists, and the legislators who do their bidding revised the laws to hide their objectives and attempt to keep them from being challenged.

23.     First, in 2015, North Carolina enacted North Carolina General Statute § 99A-2, which targets undercover investigators in all industries, not just agriculture, thus attempting to disguise its desire to suppress a particular type of speech: that concerning factory farming. North Carolina also allowed private citizens to enforce its law, thus hoping plaintiffs would not have standing to challenge the statute because its enforcement was too uncertain.

24.     North Carolina's gambit failed. In a 2016 challenge, the plaintiffs alleged they were deterred from investigating animal cruelty at a state university and state-controlled animal facilities. The Fourth Circuit held the plaintiffs successfully pleaded standing because they alleged they "have in the past conducted actual undercover investigations in public and private facilities for the purpose of uncovering unethical or illegal treatment of animals and disseminating such information to the public" and can "plausibly allege[] that they wish to continue such investigations in furtherance of their missions and that they are fully prepared to go forward but for their fear of liability under the Act." *People for the Ethical Treatment of Animals, Inc. v. Stein*, 737 Fed. App'x 122, 130 (4th Cir. 2018). The district court subsequently denied Defendants' motion to dismiss the federal constitutional claims.

7

25.     The Arkansas Ag-Gag law is the next attempt to dodge the Constitution and intimidate advocates from gathering and releasing information about the industry's practices.

26.     Just like the Ag-Gag laws before it, Arkansas legislators proudly promoted the Arkansas law as supported by industry organizations like the Farm Bureau.[4]

27.     Representative Vaught, the statute's lead sponsor, explained in introducing the Arkansas Ag-Gag law to the House Judiciary Committee that it "is modeled after a newly enacted law in North Carolina in 2016." In particular, Arkansas' statute replicates North Carolina's tactic of applying its prohibitions to all industries, thereby hoping to hide the legislature's objective to protect industrial agriculture.[5]

---

[4] Transcripts of Arkansas legislative proceedings are not available. References and quotations from legislative proceedings in this Complaint primarily come from reviewing the few audio recordings of House proceedings that were posted to the internet around the time the law was passed. Although the legislature states those posting should still be available online, Plaintiffs were unable to locate them to prepare this Complaint.

[5] Arkansas Code § 16-118-113 states, in full:
(a) As used in this section:
　　(1) "Commercial property" means: (A) A business property; (B) Agricultural or timber production operations, including buildings and all outdoor areas that are not open to the public; and (C) Residential property used for business purposes; and
　　(2) "Nonpublic area" means an area not accessible to or not intended to be accessed by the general public.
(b) A person who knowingly gains access to a nonpublic area of a commercial property and engages in an act that exceeds the person's authority to enter the nonpublic area is liable to the owner or operator of the commercial property for any damages sustained by the owner or operator.
(c) An act that exceeds a person's authority to enter a nonpublic area of commercial property includes an employee who knowingly enters a nonpublic area of commercial property for a reason other than a bona fide intent of seeking or holding employment or doing business with the employer and without authorization subsequently:
　　(1) Captures or removes the employer's data, paper, records, or any other documents and uses the information contained on or in the employer's data, paper, records, or any other documents in a manner that damages the employer;
　　(2) Records images or sound occurring within an employer's commercial property and uses the recording in a manner that damages the employer;

28.     Yet, clearly responding to the Ag-Gag litigation elsewhere, Arkansas also narrowed who can enforce the law. It excludes "a state agency [or] a state-funded institution of higher education," Ark. Code. § 16-118-113(g), the exact targets named in North Carolina. As Representative Vaught explained in her speech in support of the law on the House floor, the statute was written so it can only be "enforced through a private right of action" so as "to protect this legislation from constitutional challenges."

29.     Nonetheless, its text makes clear it is aimed at undercover investigations meant to gather information to be released to the public—First Amendment-protected activity.

30.     The particular conduct the statute prohibits mirrors the techniques of employment-based undercover investigators.

---

(3) Places on the commercial property an unattended camera or electronic surveillance device and uses the unattended camera or electronic surveillance device to record images or data for an unlawful purpose;
(4) Conspires in an organized theft of items belonging to the employer; or
(5) Commits an act that substantially interferes with the ownership or possession of the commercial property.
(d) A person who knowingly directs or assists another person to violate this section is jointly liable.
(e) A court may award to a prevailing party in an action brought under this section one (1) or more of the following remedies:
(1) Equitable relief;
(2) Compensatory damages;
(3) Costs and fees, including reasonable attorney's fees; and
(4) In a case where compensatory damages cannot be quantified, a court may award additional damages as otherwise allowed by state or federal law in an amount not to exceed five thousand dollars ($5,000) for each day, or a portion of a day, that a defendant has acted in violation of subsection (b) of this section, and that in the court's discretion are commensurate with the harm caused to the plaintiff by the defendant's conduct in violation of this section.
(f) This section does not:
(1) Diminish the protections provided to employees under state or federal law; or
(2) Limit any other remedy available at common law or provided by law.
(g) This section does not apply to a state agency, a state-funded institution of higher education, a law enforcement officer engaged in a lawful investigation of commercial property or of the owner or operator of the commercial property, or a healthcare provider or medical services provider.

9

31.     The statute also creates joint liability for anyone who aids the investigator, as occurs when an investigator is working at the direction of an advocacy organization.

32.     The statute further prohibits "us[ing] [] information" once it is obtained—that is, communicating the information, as advocates do. Ark. Code § 16-118-113(c)(1)-(2).

33.     But, it is not limited to penalizing undercover investigations. The Arkansas Ag-Gag law prohibits communications by all sorts of individuals, including parents revealing risks at daycares and consumers witnessing criminal misconduct. Ark. Code § 16-118-113(b). It is immensely broad.

34.     The legislative record, obtained via Arkansas' freedom of information statutes and attached as Exhibit A, reveals Arkansas had no reason to pass these restrictions on First Amendment-protected activities. Legislators did not identify any gap in existing law or rash of misconduct, nor consider any alternatives to attacking speech.

35.     Knee-jerk attacks on free expression cannot stand. *McCullen v. Coakley*, 134 S. Ct. 2518, 2540 (2014). This is because they will almost inevitably chill speech, as has occurred here.

36.     The Arkansas Ag-Gag law has prevented Plaintiffs ALDF and AE from investigating Defendants—the confined pig facility, Prayer Creek Farm, and industrial chicken producer Peco Foods' Arkansas facilities. As a result, the law has kept all Plaintiffs from using the information those investigations would reveal, regarding dangerous working conditions, environmental contamination, and/or the inhumane treatment of animals, in Plaintiffs' advocacy to reform the industrial animal agriculture system.

37.     The Court should thus declare the Arkansas Ag-Gag law unconstitutional and enjoin Defendants from using it to prosecute Plaintiffs ALDF and AE for engaging in their

desired investigations of Defendants' facilities, as to do so would violate the First and Fourteenth Amendments of the United States Constitution. This would remove ALDF's and AE's chill and allow all Plaintiffs to obtain information that they would use in their advocacy on matters of public concern.

**III.    JURISDICTION AND VENUE**

38.    Because this case presents the question of whether the Arkansas Ag-Gag law violates the United States Constitution, this Court has jurisdiction under 28 U.S.C. §§ 1331, 1343.

39.    Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 empower Plaintiffs to seek and this Court to enter the requested declaratory judgment.

40.    Federal Rule of Civil Procedure 65 and the Court's inherent equitable powers empower Plaintiffs to seek and this Court to enter the requested injunctive relief.

41.    Venue is proper in the Eastern District of Arkansas under 28 U.S.C. § 1391(b)(1) and (2). Both Prayer Creek Farm and the Peco Foods facilities at issue here reside in Arkansas, and the Peco Foods facilities reside in the Eastern District of Arkansas. Further, the activities related to the passage of the Arkansas Ag-Gag law occurred in the Eastern District.

**IV.    PARTIES**

42.    Defendants Jonathan and DeAnn Vaught do business as Prayer Creek Farm, which is located at 266 Dairy Road, Horatio, Arkansas, 71842.

43.    Prayer Creek Farm's permits provide it can house roughly 1,200 pigs at a time.

44.    DeAnn Vaught was the lead sponsor of the Arkansas Ag-Gag law.

45.    She is also a member of the Farm Bureau, one of the industry organizations that supported the law.

11

46.     Elsewhere, the Farm Bureau has stated its members have a "substantial interest[]" in being able to enforce Ag-Gag laws like the Arkansas statute against organizations like Plaintiffs, and specifically ALDF. Memorandum in Support of Motion to Intervene by North Carolina Farm Bureau Federation, *People for the Ethical Treatment of Animals, Inc. v. Stein*, No. 1:16-cv-0025, Dkt. No. 83, at 2 (M.D.N.C). As the Farm Bureau put it, its members "stand to lose" by not being able to enforce Ag-Gag laws. *Id.* at 10. Its members consider enforcing Ag-Gag laws a necessary means to "vindicat[e] their property rights." *Id.* at 11.

47.     Nonetheless, Plaintiffs ALDF and AE asked the Vaughts to waive their right to enforce the Arkansas Ag-Gag law against them for any investigation of Prayer Creek Farm because the law is unconstitutional. They did not do so.

48.     Therefore, ALDF and AE have concrete and substantial reasons to fear that the Vaughts, doing business as Prayer Creek Farm, would use the Ag-Gag law against them if Plaintiffs were to conduct their desired undercover investigation of the facility, as discussed below.

49.     Defendant Peco Foods, Inc. is an Alabama-based company that operates numerous Arkansas facilities, including a slaughter and processing plant and a hatchery at 4114 Highway 67 South, Pocahontas, Arkansas, 72455, and a slaughter and processing plant and a hatchery at 625 S. Allen Street, Batesville, Arkansas, 72501.

50.     The Ag-Gag law was passed following Peco Foods' substantial expansion and investment in the state.

51.     Peco Foods also regularly aligns itself with industrial agriculture trade associations like the Farm Bureau, even being connected with a conspiracy to fix chicken prices using the relationships built through those trade associations. *See, e.g.*, Third Amended and

12

Consolidated Class Action Complaint, *In re Broiler Chicken Antitrust Litigation*, No. 1:16-cv-08637 (N.D. Ill.).

52.     Nonetheless, Plaintiffs ALDF and AE asked Peco Foods to waive its right to enforce the Arkansas Ag-Gag law against them for any investigation of the Arkansas facilities identified above because the law is unconstitutional. Peco Foods did not do so.

53.     Therefore, ALDF and AE have concrete and substantial reasons to fear that Peco Foods would use the Ag-Gag law against them if they were to conduct their desired undercover investigation of the above-listed Peco Foods Arkansas facilities, as discussed more below.

54.     Plaintiff ALDF is a national 501(c)(3) nonprofit animal protection organization founded in 1979 that uses education, public outreach, investigations, legislation, and litigation to protect the lives and advance the interests of animals, including those animals who are raised for food, used in biomedical research, exhibited to the public, or bred as pets. ALDF's work is supported by more than 200,000 members and supporters across the country, many of whom live in Arkansas.

55.     Among the ways ALDF achieves its mission is by broadly publicizing and engaging in advocacy and awareness-building about the legal issues affecting animals, including farmed animals. ALDF engages in this public education and advocacy by producing a quarterly publication, *The Animals' Advocate*, drafting articles, press releases, reports, and a blog, engaging audiences through social media, and holding a wide array of virtual and in-person educational events for legal and lay audiences nationwide. In all of these fora, ALDF educates and advocates to its audiences about the myriad harms caused by factory farming and industrial slaughter, including the immense suffering of animals in these systems. In doing so, ALDF has and will continue to rely on and share information from its and others' undercover investigations.

56.     ALDF has conducted undercover investigations at animal facilities around the country, including facilities like those of Defendants. For example, in 2015, ALDF conducted an undercover employment-based investigation of a Carthage, Texas-based Tyson Foods chicken slaughterhouse. The footage ALDF's investigator captured while she hung birds on shackles in the "live hang" part of the plant showed birds treated like trash—left to suffocate by the hundreds on overcrowded conveyor belts and discarded, still alive, in heaps of dead and dying chickens, feathers, and filth. The investigation also revealed unsafe, torturous working conditions; trying to hang panicked, flapping birds on shackles at untenable speed, the investigator developed multiple injuries and ailments, including continuously getting chicken dander, feces, and feathers in her eyes as a result of the inadequate personal protective gear provided by Tyson. ALDF's investigation resulted in the filing of complaints—concerning the treatment of the chickens, food safety, worker protection, and false corporate statements—with several federal and state agencies.

57.     Similarly, in 2016, ALDF conducted an undercover employment-based investigation of a Nebraska pig breeding operation owned by The Maschhoffs, the nation's third-largest pig producer and a Hormel Foods Corporation supplier. The investigation revealed long-term neglect and lack of appropriate veterinary care—pigs suffering for days or weeks with grossly prolapsed rectums, intestinal ruptures, large open wounds, and bloody baseball-sized ruptured cysts. Pigs were denied food for long periods of time. A botched "euthanasia" resulted in a mother pig slowly dying after being shot in the head multiple times over the course of several minutes. Hormel suspended the supplier after ALDF's release of the investigation, and ALDF submitted complaints to the attorneys general of Nebraska and Illinois (where The Maschhoffs operate).

14

58.     The tactics employed by investigators that ALDF retains include obtaining employment with a facility that ALDF believes is engaged in the unethical or illegal treatment of animals, or that has access to an entity ALDF believes is engaged in such misconduct. In non-public areas of the target facility, the investigator then gathers information and/or makes recordings regarding the conduct. In order to obtain the footage and information that ALDF seeks, the investigator may also leave recording devices unattended to capture images and sound over a longer duration, such as to document the length of time for which a sick or injured animal goes without veterinary care.

59.     In order to advance its mission, ALDF releases the evidence uncovered during its investigations to the public through the media channels described above, and broadly seeks to advocate against and hold companies accountable for illegal and unethical conduct identified in the investigation, whether through civil lawsuits, regulatory comments, administrative complaints, requests for prosecution, petitions, or social media campaigns. ALDF also widely shares the information with many audiences, including reporters, members and supporters, and allows other advocacy groups to use the information.

60.     Plaintiff AE is an international nonprofit with offices in the United States—where it is has been a registered 501(c)(3) nonprofit organization since 2014—as well as Germany, Italy, Spain, the United Kingdom, Mexico, Brazil, and India. Its objective is to end cruelty to farmed animals. To accomplish this end, AE works in four arenas: (1) undercover investigations, to expose the cruel and abusive treatment of animals inside the secretive world of industrial animal agriculture; (2) education, where AE uses social media, films, and newsletters to inform consumers about their choices and encourage them to choose compassion over cruelty; (3) corporate outreach, through which AE encourages businesses to implement meaningful animal

protections within their supply chains; and (4) legal advocacy, through which AE proposes legislation, develops petitions to reform existing rules, and works to hold the perpetrators identified through its undercover investigations accountable.

61.     AE has found that undercover investigations are its most powerful tool to reform industrial animal agriculture because the images and information gathered through its and others' investigations provide visceral support for its advocacy efforts. Moreover, investigations are often featured in the media and by other organizations, expanding AE's reach.

62.     Since it was founded in 2006, AE has filmed inside more than 700 factory farms and slaughterhouses across 13 countries. It was the first organization whose investigators were able to gain access to a slaughterhouse in Spain, and the first organization whose investigators were able to gain access into the egg industry in Mexico and Brazil.

63.     Among the investigative techniques AE uses are employment-based investigations, where an AE contractor or employee obtains employment with an organization that AE believes is engaged in the unethical or illegal treatment of animals, or that has access to an entity AE believes is engaged in such misconduct. In non-public areas of the target entity, the investigator then collects information and/or makes recordings regarding the conduct. AE investigators may also leave recording devices unattended to capture images and sound over a longer duration, such as to document the length of time for which a sick or injured animal goes without veterinary care.

64.     In order to advance its mission, AE has released and will continue to release the evidence uncovered during its and others' investigations to the public through the channels described above, shares the information with reporters, and allows other advocacy groups to use the information.

65.     ALDF and AE wish to investigate Prayer Creek Farm and the Peco Foods Arkansas facilities identified above.

66.     These facilities are not open to the public and, even if they were, on information and belief, they are engaged in activities they would hide from the public, requiring ALDF and AE to use their employment-based undercover investigatory techniques to obtain the truth about what is going on in these facilities.

67.     Given the volume of pigs that Prayer Creek Farm can maintain at any time, it is likely its animals are trapped in nearly immovable quarters that produce physical and mental health risks for the animals and workers, as well as drastic environmental harms that affect the surrounding community, all of which would be hidden from public view and, in many circumstances, can only be fully comprehended from inside the facility.

68.     More specifically, due to its wholly-enclosed design and the number of pigs it keeps in those enclosures, Prayer Creek Farm likely uses "gestation crates" and/or "farrowing crates"—metal enclosures in which pregnant and nursing sows, respectively, are extremely confined for most of their lives. Gestation crates are so narrow that sows typically cannot turn around at all, or lie down comfortably during their pregnancy; farrowing crates keep pigs on their sides to allow their piglets to nurse, separating the mother from her piglets by metal bars. These crates are often associated with causing sows mental illness and at least one major meat company, Hormel Foods, has confirmed that consumers regard gestation crates as inhumane.

69.     In addition, because Prayer Creek Farm's owner is Representative Vaught, regardless of what particular practices Prayer Creek Farm employs, ALDF and AE have an interest in uncovering the activities and conditions that Representative Vaught wished to conceal from the public through the Arkansas Ag-Gag law.

17

70.     One of Peco Foods' Arkansas facilities was recently authorized by USDA to increase the already dangerous speed at which it slaughters chickens. Such speed increases result in an increased number of animals being slaughtered alive, greater rates of worker injuries—including knife wounds and repetitive stress injuries—and more contaminated meat products entering the food supply. Evidence of similar violations at Peco Foods' Arkansas plant can only be gathered through prolonged access.

71.     Moreover, Peco Foods' Arkansas slaughter facilities are "live hang" plants, in which dozens of chickens at a time are dumped from transport crates onto conveyor belts and then hung by their legs from fast-moving metal shackles. This process can result in broken legs and wings and other injuries, birds suffocating on the teeming conveyor belts, and workers taking their frustrations out on the stressed animals as the workers struggle to hang birds at an immense pace. Indeed, in the past five years, a worker at a Peco Foods live hang slaughter plant in Tuscaloosa, Alabama was cited by USDA for, on more than one occasion, hanging live birds by the head in a shackle and then pulling on the birds' heads to decapitate them. At the same Peco Foods slaughter plant the prior year, USDA had written up the plant when numerous damaged transport cages were observed and a bird's leg became stuck in a cage hole and was lacerated to the bone, leading the bird to go into shock from blood loss. Even if birds at "live hang" plants are unharmed by the dumping and shackling process, birds not properly hung may miss the electrified stun water bath meant to render them unconscious, and be boiled alive when they enter the scalding tank to loosen their feathers.

72.     Peco also has an established history of environmental pollution and failure to comply with environmental laws,[6] and ALDF has been active in protecting Arkansas' rivers and

---

[6] *See, e.g.*, https://echo.epa.gov/facilities/enforcement-case-search/results.

streams that are already suffering the negative effects of industrial animal agriculture. Therefore, both ALDF and AE believe there is an important public interest in understanding how Peco operates in Arkansas regardless of its line speeds, including its operations' effect on its labor force, animals, and the environment.

73.     ALDF and AE have retained an experienced investigator who is ready, willing, and able to conduct employment-based investigations of these facilities.

74.     But for the chill on their activities created by the Ag-Gag law, ALDF and AE would authorize their investigator to use the access they obtain through employment to gather information and record audio files and video footage in the facilities' nonpublic areas. They would do this for the sole purpose of obtaining information of public concern that they would then release to the public, use in their advocacy, and allow other advocacy groups to use to demonstrate the harms industrial agriculture generates, which producers wish to keep secret through laws like the Arkansas Ag-Gag law.

75.     ALDF and AE have not undertaken these investigations because of the Arkansas Ag-Gag law—the exact effect the law was designed to have. ALDF and AE engage in undercover investigations where no Ag-Gag laws are in place. However, neither organization is prepared to incur the risks of liability the Arkansas Ag-Gag law creates. Therefore, the Arkansas Ag-Gag law has chilled their speech.

76.     Plaintiff CBD is a thirty-year old national nonprofit organization that works through science, law, and policy to secure a future for all species, great and small, hovering on the brink of extinction. For decades CBD has worked to protect imperiled plants and wildlife, open spaces, and air and water quality, including in Arkansas, as well as to preserve the overall

quality of life for people and animals. CBD's work is supported by over 1.4 million members and online supporters across the country, many of whom live in Arkansas.

77.     CBD's species conservation and recovery interests are impaired because of the ongoing harm to imperiled species and their habitats as a result of habitat fragmentation, air and water pollution, and freshwater withdrawal practices by factory farms and slaughter operations. For example, animal wastes and other process wastewaters discharged from industrial animal agricultural operations into groundwater and neighboring streams and rivers commonly include pollutants such as phosphorous, heavy metals, and pharmaceuticals, as well as bacteria like *E. coli*. This pollution has produced profound negative effects in water quality and aquatic species health in Arkansas and across the southeastern United States, including eutrophication of waterways, toxic blooms of algae and dinoflagellates, endocrine disruption in downstream wildlife, and increased sedimentation in waterways that can cause aquatic species to suffocate and that disrupts their feeding and reproductive behaviors.

78.     CBD is deeply concerned with the conservation of imperiled species in the southeastern United States, specifically including Arkansas, and has committed substantial resources to work in that area. For instance, due to documented declines in southeastern species diversity and populations, in 2010 CBD submitted an administrative petition to the U.S. Department of the Interior, U.S. Department of Commerce, and U.S. Fish and Wildlife Service to list 404 aquatic, riparian, and wetland species from the southeastern United States as threatened or endangered under the Endangered Species Act. Of the species at issue in that petition, at least 30 are endemic to Arkansas. Many of the species at issue in that petition are specifically threatened by pollution and habitat degradation from factory farming operations, such as the Ouachita creekshell—a species of mussel found in the Ozark region.

79.     Likewise, CBD has participated in litigation to obtain federal safeguards and habitat protection for imperiled species, including species in Arkansas. It has, for example, filed lawsuits to obtain federal protections for imperiled species like the Spectaclecase—a large mussel that was historically found in at least 44 streams, but is today only believed to be found in 20 streams in Alabama, Arkansas, Illinois, Iowa, Kentucky, Minnesota, Missouri, Tennessee, Virginia, West Virginia, and Wisconsin.

80.     CBD also works towards changing the industrial animal agriculture industry. CBD has, for example, developed administrative comments on and advocated in opposition to USDA increasing line-speeds at poultry and swine slaughter plants, which includes slaughterhouses owned and operated by Peco Foods in Arkansas. CBD opposes line-speed increases because of the threats they present to animal welfare, worker health, and food safety. CBD also opposes line-speed increases because of the increased harm to the environment that will result from: (1) increasing the number of animals going through the slaughter line, which will increase plant effluent and other wastewater loads and freshwater demands; and (2) increasing the regional demand for animals produced on industrial-scale animal operations, which will increase the environmental pollution and habitat destruction from those facilities in areas that are already suffering the negative effects of industrial animal agriculture.

81.     In the past few years, CBD has specifically expanded its work in Arkansas to address environmental and public health concerns related to industrial animal agricultural in northeastern Arkansas. The industry has been expanding in northeastern Arkansas to accommodate an increased demand for broiler chickens for slaughter by, in part, Peco Foods. In support of these efforts and to advance its mission, CBD has developed administrative comments and a rulemaking petition to increase transparency around the impact of this industry growth on

the state's environment and native species, and to hold the government accountable for its role in furthering the expansion and consolidation of this industry to the detriment of public health and the environment.

82.     In additional to its regulatory and litigation work, CBD employs scientific research and creative media strategies to increase the pressure brought to bear by its litigation, and bring state and federal administrations' and the public's attention to its demands, as well as raise awareness of the issues on which it works. Among its media strategies, which are employed in Arkansas and elsewhere, CBD aids reporters with their stories and publishes interactive maps, newsletters, press releases, reports, videos, research papers, and op-eds that highlight its areas of concern and ways to reform practices to better protect animals and the environment.

83.     CBD has relied on and used information obtained through undercover investigations of industrial animal agricultural facilities, like those conducted by ALDF and AE, in its advocacy in the past. For example, in 2016 CBD utilized information from a 2007 undercover investigation from the Humane Society of the United States of a cattle processing plant in California to formulate and substantiate its arguments in an amicus brief.

84.     The ALDF and AE investigations chilled by the Arkansas Ag-Gag law would be of particular use to CBD in its advocacy, educational and litigation efforts and CBD would use that information should the investigations go forward. Indeed, given its work in Arkansas on the pollution and harm to animals caused by industrial animal agricultural operations, information and images from inside animal facilities like Prayer Creek Farm and slaughter and processing plants like Peco Foods' would directly aid CBD's efforts to explain how those operations pollute, the extent of their impacts, and the ways in which their pollution can be carried into the surrounding environment—harming both neighbors and species. Because CBD seeks to tie

22

environmental harms to human harms, any evidence of the working conditions inside and around these plants would further aid CBD's advocacy.

85.     Likewise, as part of its efforts to protect northeastern Arkansas against industrial animal agriculture pollution, including by Peco Foods, CBD wishes to call attention to USDA's failure to protect against the environmental implications of its line-speed changes, and the type of information that would be gathered by ALDF and AE through their planned investigations would aid CBD in that effort. Indeed, information from undercover investigations like those contemplated by ALDF and AE is one of the most direct ways in which CBD can fully demonstrate the nature of the runoff created by the line-speed changes, which it can then use in its advocacy.

86.     However, because of the Ag-Gag law's chilling effect on investigations like those of ALDF and AE, and their dissemination of information gathered by investigators, the Arkansas Ag-Gag law has prevented and will prevent CBD from engaging in its desired speech. Of course, because of the chill produced by the Arkansas Ag-Gag law, CBD cannot know the full extent of the information it has been denied from the law preventing constitutionally protected undercover investigations like those CBD has relied on in the past and would rely on in the future. Nonetheless, the investigations contemplated by ALDF and AE of Prayer Creek Farm and the Peco Foods Arkansas facilities are important to CBD fulfilling its mission and ALDF and AE have informed CBD they would share the information they obtained from those investigations with CBD should the investigations proceed. Thus, it is plain the Arkansas Ag-Gag law has compromised CBD's advocacy and speech.

87.     Plaintiff FCWA is a decade-old coalition of worker-based organizations whose members plant, harvest, process, pack, transport, prepare, serve, and sell food. FCWA's aim is to

23

improve wages and conditions for workers all along the food chain. It works towards these objectives through worker trainings to inform people of their rights and potential areas of exploitation, educating food consumers about working conditions in food industries, and developing alliances between pro-worker groups. FCWA has also led the development and implementation of policies in several municipalities and counties that call for public food procurement to prioritize purchasing food from producers who treat their workers well.

88.     To further these efforts, FCWA advises on and develops its own reports on working conditions, including the working conditions on factory farms like Prayer Creek Farm and processing plants like those run by Peco Foods. Indeed, working conditions at industrial animal agriculture facilities are a special area of concern to FCWA because the volume of animals being grown and slaughtered places workers at heightened risk for repetitive stress injuries that can result in lifelong disabilities. The process of catching thousands of chickens in a grow house or dismembering the tens of thousands of animals that can pass along a slaughter line in a given day regularly leads to hand, wrist, and shoulder injuries that prevent workers from being able to close their fingers or pick-up utensils. Because health care and sick leave are so limited, industrial agricultural workers often are required to forgo medical treatment that could reverse these effects, and without treatment, they become permanent.

89.     Moreover, the protective equipment industrial agriculture companies and farms provide is so feeble workers regularly report rashes and skin peeling from their direct exposure to animal waste. Numerous workers have died from the inhalation of contaminants in factory farms or from falling into factory farm manure lagoons and drowning in animals' waste.

90.     Processing plant workers also report that companies' insistence on keeping the line moving at the most rapid pace possible, while refusing to pay for additional staff to replace

workers on the line, keeps them from bathroom breaks, resulting in workers wearing diapers so they can urinate or defecate on the line.

91.     FCWA uses information from whistleblowers and has used information from undercover investigators to highlight working conditions. In presenting its "Good Food Purchasing Plan" to municipalities and counties—to change how they invest in food—FCWA has drawn from the stories of whistleblowers and would rely on employment-based undercover investigations like those performed by ALDF and AE to highlight how industrial animal agriculture companies treat their workers and why taxpayer money should not be supporting these conditions. FCWA believes hearing and witnessing workers' efforts to comply with the tasks demanded of them (particularly the speed of slaughter and dismemberment), tasks which inevitably exposes the workers to immediate and long term health risks, is an important component in altering how municipalities and counties source their food, increasing their focus on purchasing from companies that make life on the line sustainable. FCWA fears that its efforts to petition the government and lobby for these policy changes could be undercut by the Ag-Gag law keeping such information and recordings from being made public.

92.     In addition, FCWA's report *Walmart at the Crossroads* sought to highlight working conditions for the Arkansas-based supplier by drawing on information provided by whistleblowers who had been inside industrial food plants. FCWA has also used information from "match pair testing" and "salting" to identify discriminatory hiring practices and unsafe working conditions, which it has then used to advise the workers on their rights and help promote unionization. Further still, images from undercover investigations of faculties have also allowed workers' rights groups to identify unsafe working conditions and alert the Occupational Safety and Health Administration and other appropriate agencies to protect workers.

93.     Working conditions in Arkansas remain a particular focus for FCWA. Not only is there a large volume of workers involved in the food industry, but their working conditions and wages have recently received a great deal of attention, with Walmart finally agreeing to raise its minimum wage. Thus, FCWA is situated to demand other Arkansas operators improve their treatment of their workers, should it be able to demonstrate the existing conditions are insufficient. Moreover, one of FCWA's member organizations, the Northwest Arkansas Workers Justice Center, was recently shuttered. It was one of the only organizations servicing workers in that part of the state, and had focused extensively on animal agriculture workers. Thus, FCWA will be increasing its efforts in the area so the people who had come to rely on the Northwest Arkansas Workers Justice Center are properly cared for.

94.     For all of these reasons, FCWA desires to use information like what would be generated by ALDF and AE's investigations of Prayer Creek Farm and Peco Foods in its advocacy. Of course, because of the chill produced by the Arkansas Ag-Gag law, FCWA cannot know the full extent of the information it has been denied from the law preventing constitutionally protected speech. However, ALDF and AE have informed FCWA they would share that information with FCWA. Thus, because of the Ag-Gag law's chilling effect on investigations, and thus the public dissemination of information gathered by investigators, the Ag-Gag law has prevented and will prevent FCWA from engaging in its desired speech.

V.     FACTS

A.  *The Arkansas Ag-Gag Law's Text and History Demonstrate It Targets Undercover Investigations Designed To Inform the Public About Issues of Public Concern.*

95.     The Arkansas Ag-Gag law creates civil liability for "any damages sustained by [an] owner or operator" of a business against "[a] person who knowingly gains access to a

26

nonpublic area of a commercial property and engages in an act that exceeds the person's authority to enter." Ark. Code § 16-118-113(b).

96.     The statute does not define "damages," but its text makes plain it is concerned with reputational damage from the public release of accurate information about the business' illegal or unethical conduct, as occurs following an employment-based undercover investigation meant to inform the public.

97.     The law provides a non-exhaustive list of activities by employees that can violate the statute. They include: (1) "[c]aptur[ing] or remov[ing] the employer's data, paper, records, or any other documents and us[ing] the information contained on or in the employer's data, paper, records, or any other documents in a manner that damages the employer"; (2) "[r]ecord[ing] images or sound occurring within an employer's commercial property and us[ing] the recording in a manner that damages the employer"; and (3) "[p]lac[ing] on the commercial property an unattended camera or electronic surveillance device and us[ing] the unattended camera or electronic surveillance device to record images or data for an unlawful purpose." Ark. Code § 16-118-113(c)(1)-(3). Thus, it is focused on gathering information for communication—as investigators do—particularly visual information that can move the public.

98.     The lobbyist from the Arkansas Chamber of Commerce testifying in support of the bill explained the law "is intended to address corporate espionage [and] activist employment."

99.     However, Arkansas already has a robust trade secrets statute that provides for all of the relief available under the Ag-Gag law if someone steals corporate secrets. Ark. Code § 4-75-601 *et seq.* That law creates a cause of action for any losses or unjust enrichment that occurs "by misappropriation" of anything of "economic value, actual or potential." Ark. Code § 4-75-

601(4), § 4-75-606. This is in addition to a separate statute that criminalizes theft of trade secrets. Ark. Code § 5-36-107. Arkansas also has a series of laws aimed at "gang" activity, which it defines to include coordinated efforts to engage in "burglary or retail theft," Ark. Code § 5-74-201(d)(2), and that is above and beyond Arkansas' other statutes that criminalize theft, burglary, destruction of property, trespass, and inconvenience to owners of property, Ark. Code §§ 5-36-103(a)(1), 5-38-204, 5-38-203, 5-39-202, 5-39-203(a)(2). This is to say nothing of the state's civil remedies for trespass, destruction of property, tortious interference with contract, and the like. *See, e.g.*, Ark. Code § 5-39-203(f) (providing actual damages, punitive damages, and attorney's fees for trespass); Ark. Code § 18-60-102 (providing treble damages for trespass destroying certain agricultural property); *El Paso Prod. Co. v. Blanchard*, 269 S.W.3d 362, 373 (Ark. 2007) (recognizing civil cause of action for tortious interference with contract); *Norton v. Emerson*, No. CA 89-318, 1990 WL 42727, at *1 (Ark. Ct. App. Apr. 11, 1990) (affirming compensatory damages in replevin suit). Arkansas law already seeks to prevent and remedy the harms caused by "corporate espionage."

100.    Thus, the Chamber's representative essentially admits the only function of the Ag-Gag law is to target "activist employment," *i.e.*, undercover investigators who seek employment to gather information and release it to the public.

101.    This is confirmed by Representative Vaught, who in her legislative statements in support of the law warned the statute is needed because cellphone videos, like those used by undercover investigators and advocacy organizations more broadly, "can destroy any employer, any farmer" because they can show the true conditions of an operation to the public.

102.    Likewise, Representative Hillman, who spoke on the House floor in support of the law, explained he was in favor of the statute because "those of us who are farmers, we're always

concerned about who might come on our property and what they might do while they're there." Farmers, he continued, should be protected from being "sued for being cruel" by people who "take pictures or record[] things." However, Representative Hillman warned legislators not to create a record that the statute is meant to suppress information concerning "animal things and stuff like that," as he did not want the courts to be able to identify the statute as an Ag-Gag law.

103.    Were this not sufficient to demonstrate the statute's purpose to suppress the public release of information from undercover investigations, the Arkansas Ag-Gag law also provides, "A person who knowingly directs or assists another person to violate this section is jointly liable." Ark. Code § 16-118-113(d). Undercover investigators are some of the only people who engage in concerted action to plan and carry out activities that "exceed[] [their] authority" in "nonpublic area[s]" of businesses. *Id.* § 16-118-113(b)-(c). Advocacy organizations use their staff and expertise to identify entities they believe are likely to be engaged in unethical or unlawful activities and then support the investigator as he or she gains employment and gathers information there. Once the investigation is complete, the organization's press personnel enable the findings to be distributed to the broadest possible audience.

104.    Further still, the Arkansas Ag-Gag law also provides for liquidated damages if "compensatory damages cannot be quantified," as is almost always the case with reputational harm from public disclosures. Ark. Code § 16-118-113(e)(4).

105.    Moreover, the statute exempts from its reach employees who disclose information pursuant to "state or federal law." Ark. Code § 16-118-113(f)(1). Put another way, it only seeks to limit the activities of those who use *un*official channels to spread the word about their employers' misconduct, such as investigators whose goal is to release the information they find to the public, rather than report the abuse up the chain where it will never be acted upon.

29

106.    While the Arkansas Ag-Gag law's cause of action may be phrased to obscure its purpose, at every other turn the plain text and legislative history of the law reveal the statute's objective is to stop undercover investigations that will inform the public, like those that are regularly conducted and relied upon by advocacy organizations like Plaintiffs.

**B. *The Arkansas Ag-Gag Law Expressly Targets Speech.***

107.    In addition to revealing that the law's function is to suppress investigations and the resulting communications, the Arkansas Ag-Gag law's text explicitly states the statute works by restricting First Amendment-protected activities.

108.    Sections 16-118-113(c)(1)-(2) prohibit gathering information if, and only if, the information is "use[d]." These provisions only create penalties if there is a communication, *i.e.*, speech.

109.    Sections 16-118-113(c)(3) prohibits "us[ing] [an] unattended camera or electronic surveillance device to record images or data." The "*making* [of] an audio or audiovisual recording" is the equivalent of First Amendment-protected speech. *Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012) (emphasis in original); *see also Herbert*, 263 F.Supp.3d at 1208 ("[I]t appears the consensus among courts is that the act of recording is protectable First Amendment speech.").

110.    Moreover, even if §§ 16-118-113(c)(1)-(3) did not expressly reference First Amendment-protected speech in defining their reach (and they do), their text would still directly implicate the First Amendment because the First Amendment "applies to creating ... speech." *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 792 n.1 (2011). Sections 16-118-113(c)(1)-(3) restrict the gathering of information because the information could be "use[d]." Thus, the Arkansas Ag-Gag law's attack on gathering videos, photos, and information is as much an

30

affront to the First Amendment as are its other prohibitions. "Facts, after all, are the beginning point for much of the speech that is most essential to advance human knowledge and to conduct human affairs." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011).

111.    For these reasons too, § 16-118-113(c)(5) also implicates the First Amendment. This catchall provision covers "substantially interfer[ing] with the ownership or possession of" the covered property. Ark. Code § 16-118-113(c)(5). None of these terms are defined, but given the statute's focus on stopping undercover investigators from gathering facts and communicating that information, § 16-118-113(c)(5) must also be read to deter speech. Its terms could be understood to cover an investigator closing a door to a room (and thereby "possess[ing]" the area) to record activities undetected. Likewise, any release of information from an investigation that results in a boycott or lost sales could be understood as interfering with the "ownership" of the business.

112.    The text of the Ag-Gag law confirms what its structure and background suggest: its goal is stop communications, which implicates the First Amendment's protections.

### C. The Arkansas Ag-Gag Law Targets Speech that Warrants the Strongest Protections: Speech With Particular Viewpoints and Content and Used to Petition the Government.

113.    The central function of the First Amendment is to protect against laws that target speech because of its "ideas, its subject matter, or its content." *Police Dep't of Chi. v. Mosley*, 408 U.S. 92, 95-96 (1972). "Government discrimination among viewpoints—or the regulation of speech based on 'the specific motivating ideology or the opinion or perspective of the speaker'— is a 'more blatant' and 'egregious form of content discrimination,'" but strict scrutiny applies to laws that restrict speech based on its content or its viewpoint. *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2230 (2015) (quoting *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)).

114.    Moreover, the First Amendment protects individuals' "use [of] the channels and procedures of state and federal agencies and courts to advocate their causes and points of view." *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510-11 (1972). Because this protection is not only enshrined in the freedom of speech, but also in the freedom to petition, the Supreme Court has suggested that something even stronger than strict scrutiny applies when laws interfere with this advocacy: such statutes can only stand "in the most extreme circumstances." *McDonald v. Smith*, 472 U.S. 479, 486 (1985) (Brennan, Marshall & Blackmun, JJ., concurring).

115.    The Arkansas Ag-Gag law is inconsistent with all of these protections.

116.    By its plain terms, the law only prohibits activities if they occur in an area "not accessible to or not intended to be accessed by the general public." Ark. Code §§ 16-118-113(a)(2), (b). Thereby, the law provides the owner or operator of the facility complete discretion to determine what is covered, as he or she can declare whether an area was "intended to be accessed." *Id.* § 16-118-113(a)(2). The owner's or operator's viewpoint controls what can be expressed and what will be subject to liability. Numerous courts have recognized that providing "unbridled discretion" to select what speech can and cannot occur is just a means of "hid[ing] unconstitutional viewpoint discrimination." *Child Evangelism Fellowship of Md., Inc. v. Montgomery Cty. Pub. Sch.*, 457 F.3d 376, 386 (4th Cir. 2006) (collecting cases).

117.    In addition, by singling out undercover investigations that result in "damages" to "the owner or operator" for special penalties, *see, e.g.*, Ark. Code §§ 16-118-113(b), (c)(1)-(2), the Arkansas Ag-Gag law reveals it is focused on information owners and operators wish to hide. That is, the law seeks to shield owners and operators from speech that would reveal their misconduct, while allowing speech they wish to make—its restrictions only apply to speech with particular content and viewpoints.

32

118.    The legislative history confirms this objective, explaining the law seeks to stop the speech of "activist[s]," who have a different view of what is "cruel" than the owner or operator of an investigated facility. The Arkansas Ag-Gag law seeks to silence viewpoints with which owners and operators disagree and speech with a content that could suggest cruelty.

119.    Moreover, although the legislators warned against creating a record suggesting the statute is motivated by a desire to suppress speech about agriculture, by issuing that warning they did exactly that, confirming the statute is targeted at speech with a particular content: speech about factory farms and industrial animal agriculture.

120.    Further, the fact that the Ag-Gag law carves out an exception for employees reporting information "protect[ed] ... under state or federal law," demonstrates its intent to inhibit individuals from petitioning the government. Ark. Code § 16-118-113(f)(1). Specifically, the law deters investigators and the advocacy organizations for which they work from lobbying with the information gathered or otherwise using it in advocacy, creating liability if they release the information in legislative letters, meetings, testimony, or other channels that could create political pressure—all while freeing them from liability if they keep their complaints to forms and fora of others' choosing.

121.    Indeed, § 16-118-113(f)(1) seeks to channel whistleblowers' speech so narrowly that it interferes with a variety of speech that laws encourage, but do not "protect[]." *Id.* § 16-118-113(f)(1). For instance, the Clean Water Act requires states to "assemble and evaluate all existing and readily available water quality-related data and information," including any information about "[w]aters for which water quality problems have been reported by ... members of the public." 40 C.F.R. § 130.7(b)(5). In this manner, federal law encourages public participation in water regulation, but does not "protect[]" it, so that a whistleblower that provides

information on pollution would still stand in violation of the Arkansas Ag-Gag law. Ark. Code § 16-118-113(f)(1). Thereby, the Ag-Gag law further chills communications with the government.

122.     The Arkansas Ag-Gag law is one of the most "egregious" forms of restrictions on First Amendment rights. *See Reed*, 135 S. Ct. at 2223 (internal quotations omitted).

**D. *The Arkansas Ag-Gag Law's Restrictions on Speech Are Sweeping In Their Breadth.***

123.     In addition to inhibiting undercover investigations meant to release information to the public and petitioning the government, when § 16-118-113(b) is construed in light of the types of conduct § 16-118-113(c) states the statute regulates, the scope of the Ag-Gag law's penalties for speech are staggering.

124.     Section 16-118-113(a) makes clear the statute provides a cause of action to any "business property" or even "[r]esidential propert[ies] used for business purposes." Ark. Code §§ 16-118-113(a)(1)(A), (C). Section 16-118-113(b) extends the statutes to any "person" who "exceeds [their] authority to enter the nonpublic area." *Id.* § 16-118-113(b). Section 16-118-113(c) establishes the statute can be breached by communicating information. *See id.* § 16-118-113(c).

125.     Therefore the Arkansas Ag-Gag law would penalize a parent who obtained access to the "nonpublic area[s]" of a daycare, went to another room—exceeding their authority to move around the nonpublic areas—and released any notes, recordings or other information about what they witnessed in that other room to parents, the media, or in any manner except one formally "protect[ed]" by law. *Id.* §§ 16-118-113(b), (f)(1).

126.     It likewise would create liability for a customer who walked into the backroom of a store and saw illegal conduct, documented it, and then called the press.

34

127.   Indeed, this fear of whistleblowers being unable to report abuse or other crimes is exactly why AARP and the Wounded Warrior Project opposed the North Carolina Ag-Gag law, N.C. Gen. Stat. § 99A-2, on which the Arkansas statute is modeled.

128.   It is also why the North Carolina Governor, Pat McCrory, vetoed the North Carolina law—although that veto was overridden by a North Carolina legislature that is beholden to industrial agriculture's concerns.

129.   Nonetheless, the Arkansas Ag-Gag law restricts such speech.

## CLAIMS FOR RELIEF
## FIRST CAUSE OF ACTION
### (First Amendment)

130.   Plaintiffs incorporate by reference all other paragraphs of this complaint as if those allegations were set out explicitly herein.

131.   The Arkansas Ag-Gag law violates the First Amendment.

132.   It does so in at least two ways: (1) it is overbroad; and (2) numerous provisions directly regulate speech and cannot withstand any constitutional scrutiny.

133.   "The overbreadth doctrine permits the facial invalidation of laws which inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when judged in relation to the statute's plainly legitimate sweep." *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1157 (8th Cir. 2014).

134.   Here, as explained above, the core of the Arkansas Ag-Gag law implicates First Amendment-protected speech. It restricts communicating information and the gathering of information to be used in speech. It also restricts a large variety of important speech, including to the government and on matters of public concern. It particularly suppresses expressions related to the misconduct of agricultural entities, but is not limited to squelching that speech.

35

135.    None of these attacks on speech are justified. The legislative record establishes no need for the Ag-Gag law. *See* Ex. A. Nor did the legislature consider any alternatives to targeting speech. *See id.* Thus, the prohibitions on speech are unconstitutional.

136.    Indeed, the statute has no truly legitimate sweep. Its entire purpose is to discourage and limit the public disclosure of and discourse about truthful information gathered through undercover investigations. The only other rationale offered for the statute, to stop corporate espionage, is already addressed by Arkansas law, making that justification for the Ag-Gag statute nothing more than a façade, and illegitimate.

137.    That the statute might, accidently, regulate some constitutionally-unprotected activities is insufficient to save the law under the overbreadth doctrine. A law that prohibits a substantial amount of speech that the First Amendment permits is overbroad even though the State could lawfully punish *some* of the conduct regulated by the law. *See, e.g.*, *United States v. Stevens*, 559 U.S. 460, 473 (2010).

138.    Therefore, Plaintiffs are entitled to a declaratory ruling that the Arkansas Ag-Gag law is unconstitutional and unenforceable, as well as prospective relief enjoining Defendants from enforcing the Ag-Gag law so that it will no longer inhibit Plaintiffs' constitutionally-protected activities.

139.    Moreover, even if the Arkansas Ag-Gag law is not unconstitutionally overbroad, it can only stand, and be enforced, if Arkansas Code § 16-118-113 is held unconstitutional to the extent it covers employment-based undercover investigations, such as the activities described in Arkansas Code §§ 16-118-113(c)(1)-(3), (5), or equivalent activities conducted by others—such as employees of another entity who uses his or her employment to gain access to and gather information from a target—as encompassed by § 16-118-113(b). *Compare* Ark. Code § 16-118-

113(c) (covering the activities of "an employee" regarding his or her "employer's" information), *with id.* § 16-118-113(b) (covering any "person" who gathers information from "a commercial property").

140.    That is, the Court should hold Arkansas' Ag-Gag law unconstitutional and unenforceable to the extent it prohibits an individual gathering and "us[ing]" information—including through recordings, or the placing of "surveillance device[s]" on property—or penalizes the harm caused by the public release of accurate information regarding an entity's practices. *See*, *e.g.*, Ark. Code §§ 16-118-113(c)(1)-(3).

141.    The relevant provisions directly regulate using information (speech) and recording (speech). *See*, *e.g.*, *id.*

142.    They also must be construed to limit the gathering of information for public disclosure, which is protected by the First Amendment and an activity of great public import. *See, e.g.*, Arkansas Code § 16-118-113(c)(5).

143.    Subsection (b) extends these First Amendment restrictions beyond "employee[s]" to any "person." Ark. Code § 16-118-113(b).

144.    Arkansas cannot justify these restrictions on speech.

145.    As explained above, these restrictions on First Amendment activities are subject to the strictest of scrutiny because they limit communications with the government, and are viewpoint discriminatory and content based.

146.    However, even if they are subject to less scrutiny they cannot stand.

147.    Even for laws that are subject to intermediate scrutiny, the state must first attempt to "seriously address[] the problem" through means other than targeting speech, and those efforts must have proven ineffective before a restriction on First Amendment rights is allowed.

*McCullen v. Coakley*, 573 U.S. 464, 497 (2014).

148.    The legislative record here fails to establish there was any "problem" to address and indicates that Arkansas did not consider any alternatives to attacking speech, let alone work to "seriously address[]" whatever unidentifiable problem it might now contend existed before restricting speech. *Id.*; *see also* Ex. A. Therefore, the Arkansas Ag-Gag law's restrictions on speech cannot stand.

149.    Thus, Plaintiffs are entitled to a declaratory ruling that the Arkansas Ag-Gag law cannot constitutionally penalize employment-based undercover investigations like the First Amendment-protected activities described in Arkansas Code §§ 16-118-113(c)(1)-(3), (5)— whether they are conducted by the "employee" of the target operation (and covered by § 16-118-113(c)), or the employee of another entity who uses that employment to gain access to the target operation (and thus covered by section 16-118-113(b))—or squelch speech engaged in by anyone else, as restricted by § 16-118-113(b). Plaintiffs are also entitled to prospective relief enjoining Defendants from enforcing Arkansas Code § 16-118-113 to penalize such activities so that the law will no longer inhibit Plaintiffs' constitutionally-protected activities.

150.    Plaintiffs have no other adequate remedy at law.

## SECOND CAUSE OF ACTION
### (Equal Protection of the Laws)

151.    Plaintiffs incorporate by reference all other paragraphs of this complaint as if those allegations were set out explicitly herein.

152.    The Equal Protection Clause of the Fourteenth Amendment prohibits abridgments of fundamental rights, including the rights protected by the First Amendment.

153.    Thus, because the Arkansas Ag-Gag law violates the First Amendment it also violates the Equal Protection Clause.

154.     Therefore, Plaintiffs are entitled to a declaratory ruling that the Arkansas Ag-Gag law is unconstitutional and unenforceable, as well as prospective relief enjoining Defendants from enforcing an unconstitutional law.

155.     Plaintiffs have no other adequate remedy at law.

## PRAYER FOR RELIEF

Plaintiffs respectfully request an order and judgment:

1.     Declaring that the Arkansas Ag-Gag law, Ark. Code § 16-118-113, violates the United States Constitution on its face and as applied to Plaintiffs;

2.     In the alternative Plaintiffs request a declaration that Arkansas Code § 16-118-113 cannot constitutionally be used to punish the activities described in Arkansas Code §§ 16-118-113(c)(1)-(3), (5), or any individual engaging in equivalent activities that are encompassed by Arkansas Code § 16-118-113(b), because to do so would violate the United States Constitution on its face and as applied to Plaintiffs;

3.     Permanently enjoining Defendants, as well as their officers, agents, employees, attorneys, and all persons in active concert or participation with them, from enforcing the unconstitutional law;

4.     Awarding any other such relief as the Court may deem just and proper.

June 25, 2019                    Respectfully submitted,


                                 J.D. Hays
                                 J.D. Hays
                                 Arkansas Bar No. 2011043
                                 4101 W Huntington Dr. #3103
                                 J.D. Hays Law, PLLC
                                 Rogers, Arkansas 72758
                                 (870) 403-2395
                                 jd@jdhayslaw.com
                                 Counsel for Plaintiffs


                                 David S. Muraskin*
                                 Public Justice, P.C.
                                 1620 L. St, NW, Suite 630
                                 Washington, DC 20036
                                 (202) 861-5245
                                 dmuraskin@publicjustice.net
                                 Counsel for Plaintiffs

Matthew Liebman*
Cristina Stella*
Kelsey Eberly*
Animal Legal Defense Fund
525 East Cotati Avenue
Cotati, CA 94931
(707) 795-2533
mliebman@aldf.org
cstella@aldf.org
keberly@aldf.org
Counsel for Animal Legal Defense Fund

Matthew Strugar*
Law Office of Matthew Strugar
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
(323) 696-2299
matthew@matthewstrugar.com
Counsel for Animal Legal Defense Fund

Alan Chen*
Justin Marceau*
Of Counsel, Animal Legal Defense Fund
University of Denver
Sturm College of Law
2255 E. Evans Avenue
Denver, CO 80208
(303) 871-6283
(303) 871-6449
achen@law.du.edu
jmarceau@law.du.edu
Counsel for Animal Legal Defense Fund

Sarah Hanneken*
Animal Equality
8581 Santa Monica Blvd. Ste. 350,
Los Angeles, CA, 90069
(414) 405-0538
sarahh@animalequality.org
Counsel for Animal Equality

Hannah Connor*
Center for Biological Diversity
P.O. Box 2155
St. Petersburg, FL 33731
(202) 681-1676
HConnor@biologicaldiversity.org
Counsel for Center for Biological Diversity

*Pending Pro Hac Vice Admission

# Exhibit A

# MINUTES PACKET

# JUDICIARY COMMITTEE - HOUSE

# FEBRUARY 28, 2017

# 91st General Assembly
## Regular Session, 2017
## Committee Minutes
## JUDICIARY COMMITTEE- HOUSE

**CHAIRS: Rep. Matthew J. Shepherd, Chair**          **COMMITTEE STAFF:  Rebeca Haley/Judy Steelman**

**DATE:    02/28/2017 10:00:00 AM**                  **LOCATION:  Room 149**

## BILLS OR RESOLUTIONS CONSIDERED:

| Measure | Sponsor | Motion | Made By | Second By | Results |
|---------|---------|--------|---------|-----------|---------|
| HB1658 | Tucker | Do Pass | Tucker | | Carried-Voice Vote |
| SCMR2 | Bond | Do Pass | Tucker | | Carried-Voice Vote |
| HB1198 | Lundstrum | Concur in Senate Amendment | House | | Carried-Voice Vote |
| HB1542 | Shepherd | Do Pass | Shepherd | | Carried-Voice Vote |
| HB1668 | Lemons | | | | Pulled Down By Sponsor |
| HB1665 | Vaught | Do Pass | Drown | | Carried-Voice Vote |
| SB102 | Rice | Expunge Vote by which Amendment Passed | Ballinger | | Carried-Voice Vote |
| SB136 | J. Hutchinson | | | | No Action Taken |
| HB1577 | Hammer | Do Pass | Tosh | | Carried-Voice Vote |
| HB1578 | Hammer | Do Pass | B. Smith | | Carried-Voice Vote |
| HB1382 | Gazaway | | | | No Action Taken |
| HB1251 | Walker | | | | No Action Taken |
| HB1629 | Tucker | | | | No Action Taken |
| HB1630 | Tucker | | | | No Action Taken |
| HB1631 | Tucker | | | | No Action Taken |
| HB1173 | Tucker | | | | No Action Taken |
| HB1175 | Tucker | | | | No Action Taken |
| HB1236 | Gazaway | | | | No Action Taken |
| HB1248 | J. Williams | | | | No Action Taken |
| HB1268 | Murdock | | | | No Action Taken |
| HB1417 | Sturch | | | | No Action Taken |
| HB1433 | Baltz | | | | No Action Taken |

| Measure | Sponsor | Motion | Made By | Second By | Results |
|---------|---------|--------|---------|-----------|---------|
| HB1055 | Hammer | | | | No Action Taken |
| HB1657 | Gazaway | | | | No Action Taken |
| HB1659 | Tucker | | | | No Action Taken |
| HB1663 | Boyd | | | | No Action Taken |
| HB1685 | Tucker | | | | No Action Taken |
| HB1686 | Tucker | | | | No Action Taken |
| HB1687 | Tucker | | | | No Action Taken |
| SB113 | J. Hutchinson | | | | No Action Taken |
| HB1483 | Shepherd | | | | No Action Taken |
| HB1713 | Lowery | | | | No Action Taken |

## AGENDA (REVISED 2/27/17 @ 5:30 p.m.)
### Added Bills
### House Committee on Judiciary
### 91st General Assembly
### Regular Session, 2017

### Tuesday, February 28, 2017
### 10:00 AM
### Room 149, State Capitol
### Little Rock, Arkansas

| | | |
|---|---|---|
| Rep. Matthew J. Shepherd, Chair | Rep. David Whitaker | Rep. Lanny Fite |
| Rep. Dwight Tosh, Vice-Chair | Rep. Rebecca Petty | Rep. Milton Nicks, Jr. |
| Rep. Jeremy Gillam | Rep. Trevor Drown | Rep. Brandt Smith |
| Rep. Douglas House | Rep. Michelle Gray | Rep. John Maddox |
| Rep. Charlene Fite | Rep. Charles Blake | Rep. Jimmy Gazaway |
| Rep. Bob Ballinger | Rep. Clarke Tucker | Rep. Carol Dalby |
| | Rep. Laurie Rushing | Rep. Sarah Capp |

### CONCUR IN SENATE AMENDMENT

| Number | Sponsor | Subtitle |
|---|---|---|
| HB1198 | Lundstrum | TO ALLOW AN OUT-OF-STATE LAW ENFORCEMENT OFFICER TO FOLLOW A VEHICLE INTO ARKANSAS TO INVESTIGATE A FELONY OR THE OPERATION OF A VEHICLE WHILE THE DRIVER IS INTOXICATED, IMPAIRED, OR UNDER THE INFLUENCE. |

### RE-REFERRED TO COMMITTEE

| Number | Sponsor | Subtitle |
|---|---|---|
| HB1382 | Gazaway | TO AMEND THE LAW CONCERNING THE COLLECTION OF A SMALL ESTATE BY A DISTRIBUTEE; AND TO ESTABLISH PROCEDURES TO BE FOLLOWED AFTER A CLAIM IS FILED AGAINST A SMALL ESTATE. |

### REGULAR AGENDA

| Number | Sponsor | Subtitle |
|---|---|---|
| HB1251 | Walker | TO CREATE THE "HELPING OUR PEOPLE EXCEL (H.O.P.E.) ACT OF 2017"; AND FOR OTHER PURPOSES. |
| HB1542 | Shepherd | ADDRESSING THE SEALING OF A PERSON'S FELONY RECORD WHEN THE PERSON IS A FIRST-TIME FELONY OFFENDER. |
| HB1577 | Hammer | CONCERNING THE OFFENSE OF ARSON; AND CONCERNING THE STATUTE OF LIMITATIONS FOR ARSON. |
| HB1578 | Hammer | CONCERNING OFFENSES INVOLVING RIOTS, INTERFERENCE WITH EMERGENCY MEDICAL SERVICES PERSONNEL OR FIRST RESPONDERS, DISORDERLY CONDUCT, AND OBSTRUCTING A HIGHWAY OR OTHER PUBLIC PASSAGE; AND ESTABLISHING CIVIL LIABILITY. |
| HB1629 | Tucker | TO PROTECT VICTIMS OF DOMESTIC ABUSE AND STALKING; AND PROHIBITING A PERSON CONVICTED OF MISDEMEANOR DOMESTIC BATTERING OR STALKING FROM POSSESSING A FIREARM. |
| HB1630 | Tucker | TO PROTECT CHILDREN FROM UNATTENDED LOADED FIREARMS; AND TO CREATE THE OFFENSE OF NEGLIGENTLY ALLOWING ACCESS TO A FIREARM BY A CHILD. |
| HB1631 | Tucker | CONCERNING A WARRANTLESS ARREST FOR DOMESTIC ABUSE. |
| HB1173 | Tucker | TO AMEND AND MAKE CONSISTENT THE OFFENSES OF SEXUAL INDECENCY WITH A CHILD AND SEXUAL ASSAULT IN THE FOURTH DEGREE; AND TO AMEND THE DEFINITION OF "SEXUAL ABUSE" UNDER THE CHILD MALTREATMENT ACT. |
| HB1175 | Tucker | TO REQUIRE LIFETIME REGISTRATION ON THE ARKANSAS SEX OFFENDER REGISTRY FOR A PERSON CONVICTED OF RAPE WHEN THE RAPE INVOLVED THE USE OF FORCE. |
| HB1236 | Gazaway | TO PROTECT THE PRIVACY OF SURVIVING FAMILY MEMBERS OF A LAW |

| | | ENFORCEMENT OFFICER WHO DIES IN THE LINE OF DUTY; AND TO EXEMPT CERTAIN LAW ENFORCEMENT RECORDS FROM DISCLOSURE; AND TO DECLARE AN EMERGENCY. |
|---|---|---|
| HB1248 | J. Williams | TO CREATE AN EXEMPTION UNDER THE FREEDOM OF INFORMATION ACT OF 1967 CONCERNING CERTAIN LAW ENFORCEMENT INVESTIGATIVE RECORDS. |
| HB1268 | Murdock | CONCERNING THE USE OF AN IGNITION INTERLOCK DEVICE. |
| HB1417 | Sturch | CONCERNING THE OFFENSE OF SEXUAL SOLICITATION; PROVIDING FOR IMPOUNDMENT OF A MOTOR VEHICLE; AND PROVIDING FOR HUMAN TRAFFICKING AWARENESS EDUCATION FOR EDUCATORS. |
| SB102 | Rice | TO CLARIFY THE LAW CONCERNING THE FINES, FEES, AND COSTS THAT MAY BE ASSESSED FOR A VIOLATION OF THE MANDATORY SEAT BELT USE LAW. |
| HB1433 | Baltz | TO PROHIBIT A REGISTERED SEX OFFENDER FROM LIVING NEAR A FACILITY WHERE A PERSON WITH A MEDICALLY DIAGNOSED MENTAL DISABILITY OR PHYSICAL DISABILITY RESIDES. |
| HB1055 | Hammer | TO AMEND THE DEFINITION OF "MARITAL PROPERTY" FOR PURPOSES OF DIVISION OF PROPERTY IN AN ACTION FOR DIVORCE. |
| HB1657 | Gazaway | TO MAKE LEGISLATIVE CORRECTIONS AND TO REPEAL OBSOLETE LAWS FOUND IN TITLE 27 OF THE ARKANSAS CODE. |
| HB1658 | Tucker | CONCERNING THE OFFENSE OF SEXUAL ASSAULT IN THE THIRD DEGREE. |
| HB1659 | Tucker | CONCERNING INSTALLMENT PAYMENTS BY A PERSON WHO OWES COURT COSTS, FINES, OR RESTITUTION TO A CIRCUIT COURT. |
| HB1665 | Vaught | TO CREATE A CAUSE OF ACTION FOR UNAUTHORIZED ACCESS TO ANOTHER PERSON'S PROPERTY. |
| HB1663 | Boyd | TO BE KNOWN AS THE MENTAL HEALTH SPECIALTY COURT ACT OF 2017; AND CONCERNING MENTAL HEALTH SPECIALTY COURTS. |
| HB1668 | Lemons | CONCERNING THE OFFENSE OF DRIVING OR BOATING WHILE INTOXICATED; AND CONCERNING THE DISPOSITION OF A DEFENDANT CONVICTED OF DRIVING OR BOATING WHILE INTOXICATED. |
| HB1685 | Tucker | TO CLARIFY THE CRIMINAL BACKGROUND CHECKS REQUIRED FOR AN APPLICANT OR EMPLOYEE OF A CHILD CARE FACILITY OR A CHURCH-EXEMPT CHILD CARE FACILITY. |
| HB1686 | Tucker | CONCERNING THE TRACKING OF AND ACCUMULATION OF DATA CONCERNING THE FAMILIAL OR RESIDENTIAL STATUS OF A VICTIM OF A SEX OFFENSE. |
| HB1687 | Tucker | CONCERNING A REGISTERED SEX OFFENDER ON THE CAMPUS OF A PRIVATE SCHOOL. |
| SB113 | J. Hutchinson | TO REMOVE A DRIVER'S LICENSE SUSPENSION OR REVOCATION AS AN AVAILABLE PENALTY FOR OFFENSES NOT RELATED TO DRIVING A MOTOR VEHICLE. |
| SB136 | J. Hutchinson | TO CREATE THE CRIMINAL JUSTICE EFFICIENCY AND SAFETY ACT OF 2017. |
| SCMR2 | Bond | IN RESPECTFUL MEMORY OF JUSTICE DONALD CORBIN AND IN RECOGNITION OF HIS MANY CONTRIBUTIONS TO THE STATE OF ARKANSAS. |
| HB1483 | Shepherd | TO MAKE LEGISLATIVE CORRECTIONS TO AND REPEAL OBSOLETE LAWS CONTAINED IN TITLE 27 OF THE ARKANSAS CODE. |
| HB1713 | Lowery | TO ESTABLISH MURDER IN THE SECOND DEGREE AS A SEVENTY-PERCENT CRIME. |

## DEFERRED BILLS

| Number | Sponsor | Subtitle |
|---|---|---|
| HB1095 | Johnson | CONCERNING THE REQUIREMENTS FOR A CONCEALED HANDGUN LICENSE FOR A CURRENT OR FORMER MEMBER OF THE UNITED STATES ARMED FORCES. |
| HB1265 | Richey | CONCERNING THE POSSESSION AND CARRYING OF A CONCEALED OR UNCONCEALED HANDGUN; TO ESTABLISH A LICENSE TO CARRY AN UNCONCEALED HANDGUN; AND TO MAKE TECHNICAL CORRECTIONS. |
| HB1152 | Watson | CONCERNING THE ABILITY OF AN AUXILIARY LAW ENFORCEMENT OFFICER TO CARRY A CONCEALED HANDGUN AND TO BE EXEMPTED FROM THE LICENSING REQUIREMENTS TO CARRY A CONCEALED HANDGUN. |
| HB1444 | Ballinger | TO REVISE CERTAIN EMINENT DOMAIN LAWS THAT ARISE OUT OF PROPERTY RIGHTS |

SECURED UNDER THE ARKANSAS CONSTITUTION, ARTICLE 2, § 22.

HB1177        Tucker        INCREASING THE AVAILABLE SENTENCES FOR CERTAIN SEX OFFENSES WHEN COMMITTED AGAINST A FAMILY OR HOUSEHOLD MEMBER.

# ATTENDANCE

## 91st General Assembly
## Regular Session, 2017

## JUDICIARY COMMITTEE- HOUSE

## Tuesday, February 28, 2017

| MEMBERS | PRESENT | ABSENT |
|---|---|---|
| Rep. Bob Ballinger | X | |
| Rep. Charles Blake | X | |
| Rep. Sarah Capp | X | |
| Rep. Carol Dalby | X | |
| Rep. Trevor Drown | X | |
| Rep. Lanny Fite | X | |
| Rep. Charlene Fite | X | |
| Rep. Jimmy Gazaway | | X |
| Rep. Jeremy Gillam | | X |
| Rep. Michelle Gray | X | |
| Rep. Douglas House | X | |
| Rep. John Maddox | X | |
| Rep. Milton Nicks, Jr. | X | |
| Rep. Rebecca Petty | X | |
| Rep. Laurie Rushing | X | |
| Rep. Brandt Smith | X | |
| Rep. Clarke Tucker | X | |
| Rep. David Whitaker | X | |
| **Rep. Dwight Tosh, Vice Chair** | X | |
| **Rep. Matthew J. Shepherd, Chair** | X | |
| **TOTALS** | 18 | 2 |
| | | |

# 91st General Assembly

## Regular Session, 2017

## Form for Testimony

## Before the

## JUDICIARY COMMITTEE- HOUSE

**LOCATION: Room 149**                    **DATE: February 28, 2017**

**STAFF: Rebeca Haley/Judy Steelman**          **TIME: 10:00 AM**

| Bill/Resolution | Name | Interest Represented | Position (For/Against/Info) |
|---|---|---|---|
| HB1658 | LORI KUMPURIS, DEP. DIRECTOR | PROSECUTOR COORDINATOR'S OFFICE | For |
| HB1542 | BRAD CAZORT, ADMINISTRATOR | ARK. CRIME INFORMATION CENTER | For |
| HB1668 | SARAH WELLS | CITIZEN | For |
| HB1665 | ROBERT COON | IMPACT MANAGEMENT GROUP | For |

# MINUTES PACKET

# JUDICIARY COMMITTEE - HOUSE

# MARCH 2, 2017

# 91st General Assembly
## Regular Session, 2017
## Committee Minutes
## JUDICIARY COMMITTEE- HOUSE

**CHAIRS: Rep. Matthew J. Shepherd, Chair**          **COMMITTEE STAFF:  Rebeca Haley/Judy Steelman**

**DATE:    03/02/2017 10:00:00 AM**          **LOCATION: Room 149**

### BILLS OR RESOLUTIONS CONSIDERED:

| Measure | Sponsor | Motion | Made By | Second By | Results |
|---------|---------|--------|---------|-----------|---------|
| HB1665 | Vaught | Adopt Amendment BPG380 | Tucker | | Carried-Voice Vote |
| HB1665 | Vaught | Do Pass as Amended | Tucker | | Carried-Voice Vote |
| SCR6 | S. Flowers | Do Pass | D. Whitaker | | Carried-Voice Vote |
| HB1236 | Gazaway | Do Pass | Tosh | | Carried-Voice Vote |
| HB1663 | Boyd | Adopt Amendment BPG395 | M. Gray | | Carried-Voice Vote |
| HB1663 | Boyd | Do Pass as Amended | Dalby | | Carried-Voice Vote |
| SB136 | J. Hutchinson | Do Pass | Tucker | | Carried-Voice Vote |
| HB1483 | Shepherd | Concur in Senate Amendment | Shepherd | | Carried-Voice Vote |
| HB1685 | Tucker | Adopt Amendment JMB339 | Tucker | | Carried-Voice Vote |
| HB1685 | Tucker | Do Pass as Amended | Tucker | | Carried-Voice Vote |
| SB102 | Flippo | Special Order of Business, 10:00 a.m., March 7, 2017 | Ballinger | | Carried-Voice Vote |
| HB1382 | Gazaway | | | | No Action Taken |
| HB1251 | Walker | | | | No Action Taken |
| HB1629 | Tucker | | | | No Action Taken |
| HB1630 | Tucker | | | | No Action Taken |
| HB1631 | Tucker | | | | No Action Taken |
| HB1173 | Tucker | | | | No Action Taken |
| HB1175 | Tucker | | | | No Action Taken |
| HB1268 | Murdock | | | | No Action Taken |
| HB1417 | Sturch | | | | No Action Taken |
| HB1055 | Hammer | | | | No Action Taken |

| Measure | Sponsor | Motion | Made By | Second By | Results |
|---------|---------|--------|---------|-----------|---------|
| HB1657 | Gazaway | | | | No Action Taken |
| HB1659 | Tucker | | | | No Action Taken |
| HB1668 | Lemons | | | | No Action Taken |
| HB1686 | Tucker | | | | No Action Taken |
| HB1687 | Tucker | | | | No Action Taken |
| SB113 | J. Hutchinson | | | | No Action Taken |
| HB1713 | Lowery | | | | No Action Taken |
| HB1737 | Collins | | | | No Action Taken |
| HB1747 | D. Whitaker | | | | No Action Taken |
| HB1756 | Collins | | | | No Action Taken |
| HB1759 | Dalby | | | | No Action Taken |
| HB1760 | Dalby | | | | No Action Taken |
| HB1763 | Della Rosa | | | | No Action Taken |
| HB1764 | Maddox | | | | No Action Taken |
| HB1777 | Richey | | | | No Action Taken |
| HB1784 | Eaves | | | | No Action Taken |
| HB1787 | Shepherd | | | | No Action Taken |
| SB294 | Irvin | | | | No Action Taken |

# Hall of the House of Representatives

## 91st General Assembly - Regular Session, 2017

## Amendment Form

---

**Subtitle of House Bill No. 1665**

TO CREATE A CAUSE OF ACTION FOR UNAUTHORIZED ACCESS TO ANOTHER PERSON'S PROPERTY.

---

### Amendment No. 1 to House Bill No. 1665

Amend House Bill No. 1665 as originally introduced:

Delete everything after the enacting clause and substitute the following:
    "SECTION 1.  Arkansas Code Title 16, Chapter 118, is amended to add an additional section to read as follows:
        16-118-113.  Civil cause of action for unauthorized access to property.
        (a)  As used in this section:
            (1)  "Commercial property" means:
                (A)  A business property;
                (B)  Agricultural or timber production operations, including buildings and all outdoor areas that are not open to the public; and
                (C)  Residential property used for business purposes; and
            (2)  "Nonpublic area" means an area not accessible to or not intended to be accessed by the general public.
        (b)  A person who knowingly gains access to a nonpublic area of a commercial property and engages in an act that exceeds the person's authority to enter the nonpublic area is liable to the owner or operator of the commercial property for any damages sustained by the owner or operator.
        (c)  An act that exceeds a person's authority to enter a nonpublic area of commercial property includes an employee who knowingly enters a nonpublic area of commercial property for a reason other than a bona fide intent of seeking or holding employment or doing business with the employer and without authorization subsequently:
            (1)  Captures or removes the employer's data, paper, records, or any other documents and uses the information contained on or in the employer's data, paper, records, or any other documents in a manner that damages the employer;
            (2)  Records images or sound occurring within an employer's commercial property and uses the recording in a manner that damages the employer;
            (3)  Places on the commercial property an unattended camera or electronic surveillance device and uses the unattended camera or electronic surveillance device to record images or data for an unlawful purpose;

  **BPG380 - 03-02-2017 08:49:11**

      (4)  Conspires in an organized theft of items belonging to the employer; or

      (5)  Commits an act that substantially interferes with the ownership or possession of the commercial property.

     (d)  A person who knowingly directs, assists, compensates, or induces another person to violate this section is jointly liable.

     (e)  A court may award to a prevailing party in an action brought under this section one (1) or more of the following remedies:

      (1)  Equitable relief;

      (2)  Compensatory damages;

      (3)  Costs and fees, including reasonable attorney's fees; and

      (4)  In a case where compensatory damages cannot be quantified, a court may award additional damages as otherwise allowed by state or federal law in an amount not to exceed five thousand dollars ($5,000) for each day, or a portion of a day, that a defendant has acted in violation of subsection (b) of this section, and that in the court's discretion are commensurate with the harm caused to the plaintiff by the defendant's conduct in violation of this section.

     (f)  This section does not:

      (1)  Diminish the protections provided to employees under state or federal law; or

      (2)  Limit any other remedy available at common law or provided by law.

     (g)  This section does not apply to a state agency, a state-funded institution of higher education, or a law enforcement officer engaged in a lawful investigation of commercial property or of the owner or operator of the commercial property."

The Amendment was read _____
By: Representative Vaught
BPG/TDW - 03-02-2017 08:49:11
BPG380                                                     Chief Clerk

**AGENDA (Revised 3/1/2017 @ 5:20 p.m.)**
**Added Bills**
**House Committee on Judiciary**
**91st General Assembly**
**Regular Session, 2017**

**Thursday, March 02, 2017**
**10:00 AM**
**Room 149, State Capitol**
**Little Rock, Arkansas**

Rep. Matthew J. Shepherd, Chair
Rep. Dwight Tosh, Vice-Chair
Rep. Jeremy Gillam
Rep. Douglas House
Rep. Charlene Fite
Rep. Bob Ballinger

Rep. David Whitaker
Rep. Rebecca Petty
Rep. Trevor Drown
Rep. Michelle Gray
Rep. Charles Blake
Rep. Clarke Tucker
Rep. Laurie Rushing

Rep. Lanny Fite
Rep. Milton Nicks, Jr.
Rep. Brandt Smith
Rep. John Maddox
Rep. Jimmy Gazaway
Rep. Carol Dalby
Rep. Sarah Capp

## CONCUR IN SENATE AMENDMENT

| Number | Sponsor | Subtitle |
|--------|---------|----------|
| HB1483 | Shepherd | TO MAKE LEGISLATIVE CORRECTIONS TO AND REPEAL OBSOLETE LAWS CONTAINED IN TITLE 27 OF THE ARKANSAS CODE. |

## RE-REFERRED TO COMMITTEE

| Number | Sponsor | Subtitle |
|--------|---------|----------|
| HB1382 | Gazaway | TO AMEND THE LAW CONCERNING THE COLLECTION OF A SMALL ESTATE BY A DISTRIBUTEE; AND TO ESTABLISH PROCEDURES TO BE FOLLOWED AFTER A CLAIM IS FILED AGAINST A SMALL ESTATE. |
| HB1665 | Vaught | TO CREATE A CAUSE OF ACTION FOR UNAUTHORIZED ACCESS TO ANOTHER PERSON'S PROPERTY. |

## REGULAR AGENDA

| Number | Sponsor | Subtitle |
|--------|---------|----------|
| HB1251 | Walker | TO CREATE THE "HELPING OUR PEOPLE EXCEL (H.O.P.E.) ACT OF 2017"; AND FOR OTHER PURPOSES. |
| HB1629 | Tucker | TO PROTECT VICTIMS OF DOMESTIC ABUSE AND STALKING; AND PROHIBITING A PERSON CONVICTED OF MISDEMEANOR DOMESTIC BATTERING OR STALKING FROM POSSESSING A FIREARM. |
| HB1630 | Tucker | TO PROTECT CHILDREN FROM UNATTENDED LOADED FIREARMS; AND TO CREATE THE OFFENSE OF NEGLIGENTLY ALLOWING ACCESS TO A FIREARM BY A CHILD. |
| HB1631 | Tucker | CONCERNING A WARRANTLESS ARREST FOR DOMESTIC ABUSE. |
| HB1173 | Tucker | TO AMEND AND MAKE CONSISTENT THE OFFENSES OF SEXUAL INDECENCY WITH A CHILD AND SEXUAL ASSAULT IN THE FOURTH DEGREE; AND TO AMEND THE DEFINITION OF "SEXUAL ABUSE" UNDER THE CHILD MALTREATMENT ACT. |
| HB1175 | Tucker | TO REQUIRE LIFETIME REGISTRATION ON THE ARKANSAS SEX OFFENDER REGISTRY FOR A PERSON CONVICTED OF RAPE WHEN THE RAPE INVOLVED THE USE OF FORCE. |
| HB1236 | Gazaway | TO PROTECT THE PRIVACY OF SURVIVING FAMILY MEMBERS OF A LAW ENFORCEMENT OFFICER WHO DIES IN THE LINE OF DUTY; AND TO EXEMPT CERTAIN LAW ENFORCEMENT RECORDS FROM DISCLOSURE; AND TO DECLARE AN EMERGENCY. |
| HB1268 | Murdock | CONCERNING THE USE OF AN IGNITION INTERLOCK DEVICE. |
| HB1417 | Sturch | CONCERNING THE OFFENSE OF SEXUAL SOLICITATION; PROVIDING FOR |

**Notice: Silence your cell phones. Keep your personal conversations to a minimum. Observe restrictions designating areas as "Members and Staff Only"**

| | | |
|---|---|---|
| | | IMPOUNDMENT OF A MOTOR VEHICLE; AND PROVIDING FOR HUMAN TRAFFICKING AWARENESS EDUCATION FOR EDUCATORS. |
| SB102 | Flippo | TO CLARIFY THE LAW CONCERNING THE FINES, FEES, AND COSTS THAT MAY BE ASSESSED FOR A VIOLATION OF THE MANDATORY SEAT BELT USE LAW. |
| HB1055 | Hammer | TO AMEND THE DEFINITION OF "MARITAL PROPERTY" FOR PURPOSES OF DIVISION OF PROPERTY IN AN ACTION FOR DIVORCE. |
| HB1657 | Gazaway | TO MAKE LEGISLATIVE CORRECTIONS AND TO REPEAL OBSOLETE LAWS FOUND IN TITLE 27 OF THE ARKANSAS CODE. |
| HB1659 | Tucker | CONCERNING INSTALLMENT PAYMENTS BY A PERSON WHO OWES COURT COSTS, FINES, OR RESTITUTION TO A CIRCUIT COURT. |
| HB1663 | Boyd | TO BE KNOWN AS THE MENTAL HEALTH SPECIALTY COURT ACT OF 2017; AND CONCERNING MENTAL HEALTH SPECIALTY COURTS. |
| HB1668 | Lemons | CONCERNING THE OFFENSE OF DRIVING OR BOATING WHILE INTOXICATED; AND CONCERNING THE DISPOSITION OF A DEFENDANT CONVICTED OF DRIVING OR BOATING WHILE INTOXICATED. |
| HB1685 | Tucker | TO CLARIFY THE CRIMINAL BACKGROUND CHECKS REQUIRED FOR AN APPLICANT OR EMPLOYEE OF A CHILD CARE FACILITY OR A CHURCH-EXEMPT CHILD CARE FACILITY. |
| HB1686 | Tucker | CONCERNING THE TRACKING OF AND ACCUMULATION OF DATA CONCERNING THE FAMILIAL OR RESIDENTIAL STATUS OF A VICTIM OF A SEX OFFENSE. |
| HB1687 | Tucker | CONCERNING A REGISTERED SEX OFFENDER ON THE CAMPUS OF A PRIVATE SCHOOL. |
| SB113 | J. Hutchinson | TO REMOVE A DRIVER'S LICENSE SUSPENSION OR REVOCATION AS AN AVAILABLE PENALTY FOR OFFENSES NOT RELATED TO DRIVING A MOTOR VEHICLE. |
| SB136 | J. Hutchinson | TO CREATE THE CRIMINAL JUSTICE EFFICIENCY AND SAFETY ACT OF 2017. |
| HB1713 | Lowery | TO ESTABLISH MURDER IN THE SECOND DEGREE AS A SEVENTY-PERCENT CRIME. |
| HB1737 | Collins | TO AMEND AND CLARIFY THE DISCRIMINATION AND RETALIATION PROVISIONS OF THE ARKANSAS CIVIL RIGHTS ACT OF 1993. |
| HB1747 | D. Whitaker | CONCERNING PAROLE ELIGIBILITY OF A PERSON INCARCERATED IN THE DEPARTMENT OF CORRECTION. |
| HB1756 | Collins | CONCERNING THE OFFENSE OF LOITERING. |
| HB1759 | Dalby | TO MAKE LEGISLATIVE CORRECTIONS AND TO REPEAL OBSOLETE LAWS CONTAINED IN TITLE 27 OF THE ARKANSAS CODE. |
| HB1760 | Dalby | TO MAKE TECHNICAL CORRECTIONS TO THE LAW CONCERNING THE ARKANSAS NATURAL HERITAGE COMMISSION. |
| HB1763 | Della Rosa | CLARIFYING THE CRIMINAL OFFENSE OF POSSESSION OF DRUG PARAPHERNALIA. |
| HB1764 | Maddox | REMOVING REFERENCES IN THE ARKANSAS CODE TO JURY COMMISSIONERS, WHICH NO LONGER EXIST. |
| HB1777 | Richey | CONCERNING THE FUNDING OF EXPENSES AND EMPLOYEES OF THE PHILLIPS COUNTY PROSECUTING ATTORNEY IN THE FIRST JUDICIAL DISTRICT. |
| HB1784 | Eaves | CONCERNING THE QUALIFICATIONS TO BE A LAW ENFORCEMENT OFFICER. |
| HB1787 | Shepherd | CONCERNING DRAFTS OF CORRECTIVE LEGISLATION PREPARED BY THE STAFF OF THE ARKANSAS CODE REVISION COMMISSION. |
| SB294 | Irvin | CONCERNING THE SENTENCING OF A PERSON UNDER EIGHTEEN YEARS OF AGE; TO DECLARE AN EMERGENCY; AND ESTABLISHING THE FAIR SENTENCING OF MINORS ACT OF 2017. |
| SCR6 | S. Flowers | TO COMMEMORATE THE NINETY-FOURTH ANNIVERSARY OF THE UNITED STATES SUPREME COURT RULING IN MOORE V. DEMPSEY. |

## DEFERRED BILLS

| Number | Sponsor | Subtitle |
|---|---|---|
| HB1095 | Johnson | CONCERNING THE REQUIREMENTS FOR A CONCEALED HANDGUN LICENSE FOR A CURRENT OR FORMER MEMBER OF THE UNITED STATES ARMED FORCES. |
| HB1265 | Richey | CONCERNING THE POSSESSION AND CARRYING OF A CONCEALED OR |

|          |             | UNCONCEALED HANDGUN; TO ESTABLISH A LICENSE TO CARRY AN UNCONCEALED HANDGUN; AND TO MAKE TECHNICAL CORRECTIONS. |
|----------|-------------|------------------------------------------------------------------------------------------------|
| HB1152   | Watson      | CONCERNING THE ABILITY OF AN AUXILIARY LAW ENFORCEMENT OFFICER TO CARRY A CONCEALED HANDGUN AND TO BE EXEMPTED FROM THE LICENSING REQUIREMENTS TO CARRY A CONCEALED HANDGUN. |
| HB1444   | Ballinger   | TO REVISE CERTAIN EMINENT DOMAIN LAWS THAT ARISE OUT OF PROPERTY RIGHTS SECURED UNDER THE ARKANSAS CONSTITUTION, ARTICLE 2, § 22. |
| HB1177   | Tucker      | INCREASING THE AVAILABLE SENTENCES FOR CERTAIN SEX OFFENSES WHEN COMMITTED AGAINST A FAMILY OR HOUSEHOLD MEMBER. |
| HB1248   | J. Williams | TO CREATE AN EXEMPTION UNDER THE FREEDOM OF INFORMATION ACT OF 1967 CONCERNING CERTAIN LAW ENFORCEMENT INVESTIGATIVE RECORDS. |
| HB1433   | Baltz       | TO PROHIBIT A REGISTERED SEX OFFENDER FROM LIVING NEAR A FACILITY WHERE A PERSON WITH A MEDICALLY DIAGNOSED MENTAL DISABILITY OR PHYSICAL DISABILITY RESIDES. |

# ATTENDANCE

## 91st General Assembly
## Regular Session, 2017

### JUDICIARY COMMITTEE- HOUSE

### Thursday, March 02, 2017

| MEMBERS | PRESENT | ABSENT |
|---|---|---|
| Rep. Bob Ballinger | X | |
| Rep. Charles Blake | X | |
| Rep. Sarah Capp | X | |
| Rep. Carol Dalby | X | |
| Rep. Trevor Drown | X | |
| Rep. Lanny Fite | X | |
| Rep. Charlene Fite | X | |
| Rep. Jimmy Gazaway | X | |
| Rep. Jeremy Gillam | | X |
| Rep. Michelle Gray | X | |
| Rep. Douglas House | | X |
| Rep. John Maddox | X | |
| Rep. Milton Nicks, Jr. | X | |
| Rep. Rebecca Petty | X | |
| Rep. Laurie Rushing | X | |
| Rep. Brandt Smith | X | |
| Rep. Clarke Tucker | X | |
| Rep. David Whitaker | X | |
| **Rep. Dwight Tosh, Vice Chair** | X | |
| **Rep. Matthew J. Shepherd, Chair** | X | |
| **TOTALS** | 18 | 2 |
| | | |

# 91st General Assembly
## Regular Session, 2017
## Form for Testimony
## Before the
## JUDICIARY COMMITTEE- HOUSE

**LOCATION: Room 149**                              **DATE: March 02, 2017**

**STAFF: Rebeca Haley/Judy Steelman**          **TIME: 10:00 AM**

| Bill/Resolution | Name | Interest Represented | Position (For/Against/Info) |
|---|---|---|---|
| HB1236 | Chad Hinson, Chief | Trumann Police Department/Police Chief's Assoc. | For |
| HB1236 | Rick Greene | Wills Law Firm/Ark. Press Assoc. | Against |
| HB1236 | Paul Calvert | Citizen | Against |
| HB1663 | Daniel Shue, Prosecutor | Sebastian Co. Prosecutor's Office | For |
| HB1663 | Mike Rose | Citizen | For |
| HB1685 | Tonya Williams, Director | DHS - Division of Child Care and Early Childhood Education | Informational |

**TESTIMONY SIGN IN DISCLAIMER:**

The names of persons appearing on this Sign-In sheet who did not provide testimony at the meeting have not been verified as to the listed person's attendance at the meeting, identify of the person signing the sheet, or position of the person as either for or against the issue discussed.

## JUDICIARY

## SIGN-IN SHEET FOR THOSE WISHING TO SPEAK
## BEFORE THE COMMITTEE

## PLEASE PRINT                    DATE: _____

| BILL # | NAME and TITLE (If available, please leave business card) | ORGANIZATION or INTEREST REPRESENTED | FOR or AGAINST |
|---|---|---|---|
| SB113 | Colonel Bill Bryant | AR State Police | Against |
| HB1055 | Justin Allen | Atty. | Against |
| HB1784 | Jami Cook | Commission on Law Enforcement | Against |
| (HB1663) | David Shue | Prosecuting Attorney | For |
| HB1784 | Sheriff Doc Holladay | Pulaski County Sheriff | Against |
| "B1236 | Tom Larimer | An Press Assoc. | Against |
| (HB1236) | Paul Calvert | Good | Against |
| HB 1173 | JEFF ROSENZWEIG | ARK ASSN of CRIM DEFENSE LAWYERS | Against |
| HB 1713 | | | |
| HB 1756 | | | |
| HB 175 | | | |
| (HB 1663) | Mike Rose | Rose Advocacy & Consulting | For |
| HB1784 | Chad Henson | Arkansas Association of Chiefs of Police | Against |
| HB1784 | Mike Godfrey | Ark Sheriffs Assoc | Against |
| | | | |

# MINUTES PACKET

# JUDICIARY COMMITTEE - SENATE

# MARCH 13, 2017

# 91st General Assembly
## Regular Session, 2017
## Committee Minutes
## JUDICIARY COMMITTEE - SENATE

**CHAIRS: Sen. Jeremy Hutchinson, Chair**          **COMMITTEE STAFF: Rebeca Haley/Judy Steelman**

**DATE:   03/13/2017 9:00:00 AM**                    **LOCATION: Room 171**

### BILLS OR RESOLUTIONS CONSIDERED:

| Measure | Sponsor | Motion | Made By | Second By | Results |
|---------|---------|--------|---------|-----------|---------|
| SB40 | A. Clark | Do Pass | Standridge | Rice | Carried-Voice Vote |
| SB306 | A. Clark | Adopt Amendment JNL234 | G. Stubblefield | Rice | Carried-Voice Vote |
| SB306 | A. Clark | Do Pass as Amended | Rice | T. Garner | Carried-Voice Vote |
| HB1665 | Vaught | Adopt Amendment BPG515 | Collins-Smith | T. Garner | Carried-Voice Vote |
| HB1665 | Vaught | Do Pass as Amended | G. Stubblefield | Standridge | Carried-Voice Vote |
| HB1685 | Tucker | Do Pass | Bond | J. Hutchinson | Carried-Voice Vote |
| HB1686 | Tucker | Do Pass | G. Stubblefield | T. Garner | Carried-Voice Vote |
| HB1175 | Tucker | Do Pass | Bond | T. Garner | Carried-Voice Vote |
| SB600 | Bond | Adopt Amendment BPG519 | Bond | J. Hutchinson | Carried-Voice Vote |
| SB600 | Bond | | | | Pulled Down By Sponsor |
| HB1577 | Hammer | Adopt Amendment BPG471 | T. Garner | Rice | Carried-Voice Vote |
| HB1577 | Hammer | Do Pass as Amended | G. Stubblefield | T. Garner | Carried-Voice Vote |
| HB1578 | Hammer | Adopt Amendment BPG472 | Bond | J. Hutchinson | Carried-Voice Vote |
| HB1578 | Hammer | | | | Pulled Down By Sponsor |
| SB656 | G. Stubblefield | Do Pass | Collins-Smith | T. Garner | No Action Taken |
| SB37 | A. Clark | Do Pass | Rice | G. Stubblefield | Carried-Voice Vote |
| SB535 | J. Cooper | Special Order of Business, 10.00 a.m., March 14, 2017 | J. Hutchinson | T. Garner | Carried-Voice Vote |
| SB343 | B. King | | | | No Action Taken |
| SB8 | A. Clark | | | | No Action Taken |
| SB16 | A. Clark | | | | No Action Taken |
| SB17 | A. Clark | | | | No Action Taken |

| Measure | Sponsor | Motion | Made By | Second By | Results |
|---------|---------|--------|---------|-----------|---------|
| SB18 | A. Clark | | | | No Action Taken |
| SB33 | Hickey | | | | No Action Taken |
| SB36 | A. Clark | | | | No Action Taken |
| SB41 | A. Clark | | | | No Action Taken |
| SB177 | B. King | | | | No Action Taken |
| SB225 | Rapert | | | | No Action Taken |
| HB1041 | B. Smith | | | | No Action Taken |
| HB1361 | Speaks | | | | No Action Taken |
| SB305 | A. Clark | | | | No Action Taken |
| SB307 | A. Clark | | | | No Action Taken |
| HB1466 | Drown | | | | No Action Taken |
| HB1367 | Watson | | | | No Action Taken |
| HB1540 | Shepherd | | | | No Action Taken |
| SB414 | Hester | | | | No Action Taken |
| HB1514 | E. Armstrong | | | | No Action Taken |
| SB444 | T. Garner | | | | No Action Taken |
| SB492 | A. Clark | | | | No Action Taken |
| SB493 | D. Sanders | | | | No Action Taken |
| SB497 | Irvin | | | | No Action Taken |
| HB1542 | Shepherd | | | | No Action Taken |
| HB1658 | Tucker | | | | No Action Taken |
| SB533 | J. Hutchinson | | | | No Action Taken |
| SB548 | Files | | | | No Action Taken |
| SB554 | J. Hutchinson | | | | No Action Taken |
| SB563 | T. Garner | | | | No Action Taken |
| SB580 | Elliott | | | | No Action Taken |
| SB585 | Rice | | | | No Action Taken |
| SB586 | Hester | | | | No Action Taken |
| SB590 | B. Johnson | | | | No Action Taken |
| SB594 | Collins-Smith | | | | No Action Taken |
| SB616 | Bond | | | | No Action Taken |
| SB626 | J. Hutchinson | | | | No Action Taken |
| SB648 | T. Garner | | | | No Action Taken |

| Measure | Sponsor | Motion | Made By | Second By | Results |
|---------|---------|--------|---------|-----------|---------|
| SB660 | Collins-Smith | | | | No Action Taken |
| SB702 | E. Williams | | | | No Action Taken |
| SB718 | Hester | | | | No Action Taken |
| SB724 | J. Dismang | | | | No Action Taken |
| SB727 | Collins-Smith | | | | No Action Taken |
| SB728 | Collins-Smith | | | | No Action Taken |
| SB731 | G. Stubblefield | | | | No Action Taken |
| SB734 | A. Clark | | | | No Action Taken |
| SB736 | A. Clark | | | | No Action Taken |
| SB737 | A. Clark | | | | No Action Taken |
| SB738 | A. Clark | | | | No Action Taken |
| SB740 | A. Clark | | | | No Action Taken |
| SB741 | A. Clark | | | | No Action Taken |
| SB751 | G. Stubblefield | | | | No Action Taken |
| SB753 | B. King | | | | No Action Taken |
| SB774 | Collins-Smith | | | | No Action Taken |
| SB777 | L. Chesterfield | | | | No Action Taken |
| SB781 | Collins-Smith | | | | No Action Taken |
| SB788 | Hester | | | | No Action Taken |
| HB1249 | Collins | | | | No Action Taken |
| HB1777 | Richey | | | | No Action Taken |
| HB1554 | Drown | | | | No Action Taken |

# ARKANSAS SENATE
## 91st General Assembly - Regular Session, 2017
## Amendment Form

---

**Subtitle of House Bill No. 1665**

TO CREATE A CAUSE OF ACTION FOR UNAUTHORIZED ACCESS TO ANOTHER PERSON'S PROPERTY.

---

### Amendment No. ___ to House Bill No. 1665

Amend House Bill No. 1665 as engrossed, H3/3/17 (version: 03/03/2017 10:07:55 AM):

Page 2, delete lines 23 and 24, and substitute the following:
    "(d)  A person who knowingly directs or assists another person to violate this section is jointly liable."

AND

Page 3, delete lines 6 through 9, and substitute the following:
    "(g)  This section does not apply to a state agency, a state-funded institution of higher education, a law enforcement officer engaged in a lawful investigation of commercial property or of the owner or operator of the commercial property, or a healthcare provider or medical services provider."

## AGENDA
## Senate Committee on Judiciary
## 91st General Assembly
## Regular Session, 2017

**Monday, March 13, 2017**
**09:00 AM**
**Room 171, State Capitol**
**Little Rock, Arkansas**

Sen. Jeremy Hutchinson, Chair
Sen. Linda Collins-Smith, Vice-Chair
Sen. Gary Stubblefield
Sen. Bryan King

Sen. Terry Rice
Sen. Greg Standridge
Sen. Trent Garner
Sen. Will Bond

### RE-REFERRED TO COMMITTEE

| Number | Sponsor | Subtitle |
|--------|---------|----------|
| SB343 | B. King | TO AMEND THE AUTHORITY OF THE ARKANSAS TOBACCO CONTROL BOARD TO ASSESS CIVIL PENALTIES; AND TO MODIFY CIVIL PENALTIES FOR UNLAWFUL SALES OF TOBACCO PRODUCTS. |
| SB37 | A. Clark | PERMITTING A CONCEALED CARRY LICENSEE TO POSSESS A CONCEALED HANDGUN IN HIS OR HER EMPLOYER'S PARKING LOT. |

### REGULAR AGENDA

| Number | Sponsor | Subtitle |
|--------|---------|----------|
| SB8 | A. Clark | TO AMEND CONFIDENTIALITY AND NONDISCLOSURE PROVISIONS OF THE CHILD MALTREATMENT ACT. |
| SB16 | A. Clark | TO AUTHORIZE A REVIEW OF AGENCY PROCEDURE; AND TO AMEND CONFIDENTIALITY AND DISCLOSURE PROVISIONS OF THE CHILD MALTREATMENT ACT. |
| SB17 | A. Clark | TO AMEND PROVISIONS IN THE CHILD MALTREATMENT ACT; TO AMEND PROVISIONS IN THE JUVENILE CODE; AND TO AMEND PROVISIONS CONCERNING THE PLACEMENT OF JUVENILES. |
| SB18 | A. Clark | TO REQUIRE THE APPOINTMENT OF PARENT COUNSEL IN A PROCEEDING TO TERMINATE PARENTAL RIGHTS; AND TO AMEND THE STATE CENTRAL SERVICES FUND. |
| SB33 | Hickey | TO ALLOW A CONCEALED HANDGUN LICENSEE TO KEEP A HANDGUN IN HIS OR HER LOCKED PRIVATE MOTOR VEHICLE ON HIS OR HER EMPLOYER'S PARKING LOT IN CERTAIN CIRCUMSTANCES. |
| SB36 | A. Clark | CONCERNING HANDGUN TRAINING REQUIREMENTS FOR VETERANS OF THE UNITED STATES ARMED FORCES AND CURRENT MEMBERS OF THE UNITED STATES ARMED FORCES WHO APPLY FOR A CONCEALED HANDGUN LICENSE. |
| SB40 | A. Clark | TO AMEND PROVISIONS IN THE JUVENILE CODE CONCERNING THE PLACEMENT OF JUVENILES. |
| SB41 | A. Clark | TO AMEND CONFIDENTIALITY EXEMPTIONS UNDER THE CHILD MALTREATMENT ACT. |
| SB177 | B. King | REQUIRING A PERSON WHO HAS THREE OR MORE PREVIOUS COMMITMENTS TO THE DEPARTMENT OF CORRECTION TO SERVE AT LEAST EIGHTY PERCENT OF HIS OR HER SENTENCE FOR HIS OR HER NEXT COMMITMENT TO THE DEPARTMENT BEFORE BEING ELIGIBLE FOR PAROLE. |
| SB225 | Rapert | CONCERNING CREDIT OR DEBIT CARD "SKIMMING"; AND CREATING THE OFFENSE OF UNAUTHORIZED ACQUISITION OR TRANSFER OF FINANCIAL SIGHT ORDER OR PAYMENT CARD INFORMATION. |
| HB1041 | B. Smith | TO PROTECT THE RIGHTS AND PRIVILEGES GRANTED UNDER THE ARKANSAS CONSTITUTION AND THE UNITED STATES CONSTITUTION; AND TO DECLARE AMERICAN LAWS FOR AMERICAN COURTS. |

**Notice: Silence your cell phones. Keep your personal conversations to a minimum. Observe restrictions designating areas as *"Members and Staff Only"***

| | | |
|---|---|---|
| HB1361 | Speaks | TO AMEND THE GROUNDS FOR DIVORCE OR SEPARATION UNDER THE COVENANT MARRIAGE ACT OF 2001; AND TO ADD MENTAL ABUSE AS A GROUNDS FOR DIVORCE AND SEPARATION UNDER THE COVENANT MARRIAGE ACT OF 2001. |
| SB305 | A. Clark | TO AMEND THE DEFINITION OF "NEGLECT" AND THE LAW CONCERNING CLOSURES OF CHILD MALTREATMENT INVESTIGATIONS; AND TO MAKE CERTAIN ACTS OF A PARENT, GUARDIAN, CUSTODIAN, OR FOSTER PARENT NONCRIMINAL. |
| SB306 | A. Clark | CONCERNING A NONCUSTODIAL PARENT'S UNSUPERVISED VISITATION WITH HIS OR HER CHILD; TO AMEND DEFINITIONS UNDER THE ARKANSAS JUVENILE CODE OF 1989; AND TO AMEND THE LAW ON PROBABLE CAUSE HEARINGS AND THE TERMINATION OF PARENTAL RIGHTS. |
| SB307 | A. Clark | CONCERNING DRUG TESTING UNDER THE CHILD MALTREATMENT ACT; CONCERNING CHILD MALTREATMENT INVESTIGATION REPORTS; TO AMEND THE DEFINITION OF "NEGLECT"; AND TO AMEND THE LAW CONCERNING INVESTIGATIVE DETERMINATIONS. |
| HB1466 | Drown | TO ESTABLISH THE STOLEN VALOR ACT. |
| HB1367 | Watson | CONCERNING AN AUXILIARY LAW ENFORCEMENT OR A RETIRED LAW ENFORCEMENT OFFICER CARRYING A CONCEALED HANDGUN; AND CONCERNING RETIRED LAW ENFORCEMENT OFFICERS. |
| HB1540 | Shepherd | CONCERNING THE REGISTRATION OF CONVICTED SEX OFFENDERS ON THE ARKANSAS SEX OFFENDER REGISTRY; CONCERNING REQUIRED INFORMATION ON THE ARKANSAS SEX OFFENDER REGISTRY; AND CONCERNING IN-PERSON REPORTING. |
| SB414 | Hester | TO AMEND THE UNIFORM COMMERCIAL CODE TO PREVENT FRAUDULENT LIEN FILINGS. |
| HB1514 | E. Armstrong | TO CREATE THE OFFENSE OF IMPROPER USE OF OR ALTERING THE STATE SEAL. |
| SB444 | T. Garner | CONCERNING THE CARRYING AND POSSESSION OF A HANDGUN WITHOUT A LICENSE. |
| SB492 | A. Clark | TO ESTABLISH THE OFFICE OF THE INSPECTOR GENERAL FOR THE DEPARTMENT OF HUMAN SERVICES; TO INCREASE CRIMINAL PENALTIES FOR THEFT OF PUBLIC BENEFITS; AND TO CREATE THE OFFENSE OF MISUSE OF STATE PROPERTY. |
| SB493 | D. Sanders | TO AMEND THE DEFINITION OF THE OFFENSE OF COMPUTER FRAUD TO INCLUDE EXTORTION USING RANSOMWARE. |
| SB497 | Irvin | TO PROVIDE FOR THE SUPERVISION OF DELINQUENT YOUTH UNDER THE INTERSTATE COMPACT FOR JUVENILES. |
| HB1542 | Shepherd | ADDRESSING THE SEALING OF A PERSON'S FELONY RECORD WHEN THE PERSON IS A FIRST-TIME FELONY OFFENDER. |
| HB1577 | Hammer | CONCERNING THE OFFENSE OF ARSON; AND CONCERNING THE STATUTE OF LIMITATIONS FOR ARSON. |
| HB1658 | Tucker | CONCERNING THE OFFENSE OF SEXUAL ASSAULT IN THE THIRD DEGREE. |
| SB533 | J. Hutchinson | TO CREATE THE DYNASTY TRUST ACT. |
| SB535 | J. Cooper | CONCERNING DUAL JUDICIAL DISTRICTS. |
| SB548 | Files | CREATING THE ARKANSAS FALSE CLAIMS ACT; AND CONCERNING THE SUBMISSION OF FALSE CLAIMS TO THE STATE OR A LOCAL GOVERNMENT. |
| SB554 | J. Hutchinson | CONCERNING THE AUTHORITY OF A UNITED STATES POSTAL INSPECTOR TO MAKE AN ARREST IN THE STATE. |
| SB563 | T. Garner | CONCERNING THE FILING OF MULTIPLE FRIVOLOUS LAWSUITS BY INMATES IN THE DEPARTMENT OF CORRECTION. |
| HB1578 | Hammer | CONCERNING OFFENSES INVOLVING RIOTS, INTERFERENCE WITH EMERGENCY MEDICAL SERVICES PERSONNEL OR FIRST RESPONDERS, DISORDERLY CONDUCT, AND OBSTRUCTING A HIGHWAY OR OTHER PUBLIC PASSAGE; AND ESTABLISHING CIVIL LIABILITY. |
| SB580 | Elliott | TO AMEND THE LAW CONCERNING THE PRESUMPTIONS OF PARENTAGE IN CASES OF CHILDREN BORN BY MEANS OF ARTIFICIAL INSEMINATION AND SURROGACY. |
| SB585 | Rice | CONCERNING THE INTENDED PURPOSE OF THE CONCEALED HANDGUN LICENSING PROGRAM. |

| SB586 | Hester | REQUIRING A PERSON CONVICTED OF AN OFFENSE USING A COMPUTER OR THE INTERNET TO PAY AN ADDITIONAL FEE; AND TO CREATE A FEE. |
|---|---|---|
| SB590 | B. Johnson | CONCERNING THE CARRYING OF A WEAPON; AND REPEALING THE "JOURNEY" PROVISION FOR HANDGUN AND WEAPONS OFFENSES. |
| SB594 | Collins-Smith | TO BE KNOWN AS THE TRUE CAMPUS CARRY ACT; AND CONCERNING THE ABILITY TO CARRY A HANDGUN ON A COLLEGE OR UNIVERSITY CAMPUS BY A PERSON WHO HAS A CONCEALED HANDGUN LICENSE. |
| SB600 | Bond | TO AMEND THE LAW CONCERNING THE CIVIL EVICTION PROCESS; TO CREATE AN EVICTION PROCESS FOR FAILURE TO PAY RENT. |
| SB616 | Bond | CONCERNING THE INTERROGATION OF A JUVENILE BY LAW ENFORCEMENT; AND CONCERNING JUVENILE CONFESSIONS. |
| SB626 | J. Hutchinson | TO PRESERVE THE RIGHT TO BE LEFT ALONE. |
| SB648 | T. Garner | CONCERNING THE VENUE OF CERTAIN LAWSUITS; TO PROMOTE JUDICIAL EFFICIENCY IN ACTIONS WHERE THE STATE IS AN INTERESTED PARTY; AND TO DECLARE AN EMERGENCY. |
| SB656 | G. Stubblefield | TO EXPAND THE DEFINITION OF "FICTIVE KIN". |
| SB660 | Collins-Smith | TO RESTORE RIGHTS OF ARKANSANS TO CARRY FIREARMS IN PUBLIC PLACES. |
| SB702 | E. Williams | CONCERNING THE ASSESSMENT OF AN ADDITIONAL FINE FOR CRIMINAL OFFENSES COMMITTED AGAINST OR IN THE PRESENCE OF A CHILD AND THE ASSESSMENT OF AN ADDITIONAL FINE FOR TRAFFIC VIOLATIONS COMMITTED IN THE PRESENCE OF A CHILD. |
| SB718 | Hester | TO PROTECT CHILDREN IN DELINQUENCY CASES AND FAMILIES IN NEED OF SERVICES CASES FROM UNWARRANTED TESTING FOR DRUG OR ALCOHOL ABUSE. |
| SB724 | J. Dismang | EXEMPTING A PRIVATE UNIVERSITY OR PRIVATE COLLEGE FROM THE REQUIREMENT THAT IT POST AT ITS ENTRANCE THAT THE PRIVATE UNIVERSITY OR PRIVATE COLLEGE DOES NOT PERMIT THE CARRYING OF A CONCEALED HANDGUN. |
| SB727 | Collins-Smith | CONCERNING THE CIVIL FORFEITURE OF ASSETS INVOLVED IN CERTAIN CRIMINAL OFFENSES. |
| SB728 | Collins-Smith | CONCERNING A CONCEALED HANDGUN LICENSEE CARRYING HIS OR HER CONCEALED HANDGUN INTO A STATE OFFICE, A STATE AGENCY, A STATE FACILITY, OR THE STATE CAPITOL BUILDING. |
| SB731 | G. Stubblefield | TO ABOLISH THE NEW BUSINESS RULE AS A DENIAL OF DAMAGES FOR LOST PROFITS. |
| SB734 | A. Clark | TO AMEND THE LAW CONCERNING THE TERMINATION OF PARENTAL RIGHTS; AND CONCERNING THE PROCEDURE FOR THE REINSTATEMENT OF PARENTAL RIGHTS. |
| SB736 | A. Clark | TO AMEND THE LAW CONCERNING THE RIGHT OF A PARENT, CUSTODIAN, AND PUTATIVE PARENT TO HAVE COUNSEL DURING DEPENDENCY-NEGLECT AND TERMINATION OF PARENTAL RIGHTS PROCEEDINGS. |
| SB737 | A. Clark | TO ESTABLISH THE DIVISION OF DEPENDENCY-NEGLECT PARENTS REPRESENTATION; THE DIVISION OF AD LITEM REPRESENTATION; AND THE DIVISION OF COURT-APPOINTED SPECIAL ADVOCATES. |
| SB738 | A. Clark | TO AMEND THE LAW CONCERNING CHILD WELFARE HEARINGS. |
| SB740 | A. Clark | TO AMEND THE LAWS RELATED TO THE RIGHTS OF GRANDPARENTS. |
| SB741 | A. Clark | TO AMEND THE LAWS REGARDING THE RIGHTS OF GRANDPARENTS. |
| SB751 | G. Stubblefield | TO CREATE A CAUSE OF ACTION FOR UNAUTHORIZED ACCESS TO ANOTHER PERSON'S PROPERTY; AND CONCERNING ACCESS TO ANOTHER PERSON'S PROPERTY. |
| SB753 | B. King | TO ESTABLISH A METHOD FOR A PERSON WITH A CRIMINAL BACKGROUND TO REGAIN HIS OR HER RIGHTS TO POSSESS A FIREARM UNDER CERTAIN CIRCUMSTANCES. |
| SB774 | Collins-Smith | TO CREATE THE ARKANSAS PHYSICAL PRIVACY AND SAFETY ACT; AND TO DECLARE AN EMERGENCY. |
| HB1665 | Vaught | TO CREATE A CAUSE OF ACTION FOR UNAUTHORIZED ACCESS TO ANOTHER PERSON'S PROPERTY. |
| HB1685 | Tucker | TO CLARIFY THE CRIMINAL BACKGROUND CHECKS REQUIRED FOR AN APPLICANT OR |

EMPLOYEE OF A CHILD CARE FACILITY OR A CHURCH-EXEMPT CHILD CARE FACILITY.

| Number | Sponsor | Subtitle |
|---|---|---|
| SB777 | L. Chesterfield | TO AMEND THE LAW CONCERNING CHILD CUSTODY. |
| SB781 | Collins-Smith | CONCERNING TRUTH IN SENTENCING. |
| SB788 | Hester | TO AMEND THE LAW CONCERNING A MECHANIC'S LIEN. |
| HB1249 | Collins | CONCERNING THE POSSESSION OF A CONCEALED HANDGUN IN A PUBLIC UNIVERSITY, PUBLIC COLLEGE, OR COMMUNITY COLLEGE BUILDING AND CONCERNING PRIVILEGES ASSOCIATED WITH AN ENHANCED LICENSE TO CARRY A CONCEALED HANDGUN. |
| HB1175 | Tucker | TO REQUIRE LIFETIME REGISTRATION ON THE ARKANSAS SEX OFFENDER REGISTRY FOR A PERSON CONVICTED OF RAPE WHEN THE RAPE INVOLVED THE USE OF FORCE. |
| HB1777 | Richey | CONCERNING THE FUNDING OF EXPENSES AND EMPLOYEES OF THE PHILLIPS COUNTY PROSECUTING ATTORNEY IN THE FIRST JUDICIAL DISTRICT. |
| HB1686 | Tucker | CONCERNING THE TRACKING OF AND ACCUMULATION OF DATA CONCERNING THE FAMILIAL OR RESIDENTIAL STATUS OF A VICTIM OF A SEX OFFENSE. |
| HB1764 | Maddox | REMOVING REFERENCES IN THE ARKANSAS CODE TO JURY COMMISSIONERS, WHICH NO LONGER EXIST. |
| HB1773 | Rushing | TO AMEND GRANDPARENTS' RIGHTS IN CUSTODY AND VISITATION MATTERS; AND TO GRANT VISITATION RIGHTS TO GRANDPARENTS WHEN A PARENT OF A CHILD IS DECEASED. |

## SPECIAL ORDER OF BUSINESS- TUESDAY, MARCH 14, 2017- 10 MINUTES UPON ADJOURNMENT

| Number | Sponsor | Subtitle |
|---|---|---|
| HB1554 | Drown | CONCERNING PRIVATE REAL PROPERTY RIGHTS; TO PROTECT NATURAL RESOURCES, AGRICULTURAL RESOURCES, AND HISTORICAL ARTIFACTS; TO DETER CRIMINAL ACTIVITY ON A PERSON'S REAL PROPERTY; AND CONCERNING THE OFFENSE OF CRIMINAL TRESPASS. |

### DEFERRED BILLS

| Number | Sponsor | Subtitle |
|---|---|---|
| SB85 | Teague | TO AMEND CERTAIN CRIMINAL OFFENSES CONCERNING ABUSES OF PUBLIC OFFICE; TO AMEND THE LAW CONCERNING ABUSE OF OFFICE; AND TO AMEND THE LAW CONCERNING ABUSE OF PUBLIC TRUST. |
| SB6 | Bond | TO PROTECT CITIZENS WHO ARE VICTIMS OF JUDICIAL ETHICS VIOLATIONS; TO CREATE A CAUSE OF ACTION AGAINST JUDGES AND JUSTICES WHO HAVE BEEN CONVICTED OF CERTAIN OFFENSES; AND TO CREATE AN EXCEPTION TO JUDICIAL IMMUNITY. |
| SB145 | Bond | TO AMEND THE LAW CONCERNING THE ELEMENTS AND PENALTIES OF NEGLIGENT HOMICIDE. |
| SB43 | J. Hutchinson | CONCERNING CIVIL SUITS IN CONNECTION WITH CRIMINAL ACTIVITY. |
| SB130 | G. Stubblefield | CONCERNING THE OMNIBUS DWI OR BWI ACT; CONCERNING OPERATION OF A MOTOR VEHICLE OR BOAT UNDER THE INFLUENCE OF MARIJUANA; AND ESTABLISHING A PRESUMPTIVE LEVEL OF INTOXICATION DUE TO MARIJUANA IN A PERSON'S BODILY FLUIDS. |
| SB152 | B. Johnson | TO PROTECT THE PRIVACY OF SURVIVING FAMILY MEMBERS OF A LAW ENFORCEMENT OFFICER WHO DIES IN THE LINE OF DUTY; AND TO EXEMPT CERTAIN LAW ENFORCEMENT RECORDS FROM DISCLOSURE; AND TO DECLARE AN EMERGENCY. |
| SB269 | J. Hutchinson | AN ACT CONCERNING THE COLLECTION OF RESTITUTION; AND TO ESTABLISH THE DEPARTMENT OF FINANCE AND ADMINISTRATION AS THE DESIGNATED AGENCY FOR COLLECTION OF RESTITUTION IN CERTAIN CIRCUMSTANCES. |
| SB338 | J. Hutchinson | CONCERNING THE DEFINITION OF "TARGET GROUP" AS IT IS APPLIES TO COMMUNITY CORRECTION. |

SB516     G. Stubblefield     AMENDING THE SENTENCING RANGE FOR CERTAIN MURDER CONVICTIONS; CONCERNING THE REOPENING OF UNSOLVED MURDER CASES; CONCERNING A MINIMUM BAIL IN A MURDER CASE; AND CONCERNING PAROLE FOR MURDER CONVICTIONS.

**ATTENDANCE**

**91st General Assembly
Regular Session, 2017**

**JUDICIARY COMMITTEE - SENATE**

**Monday, March 13, 2017**

| MEMBERS | PRESENT | ABSENT |
|---|---|---|
| Sen. Will Bond | X | |
| Sen. Trent Garner | X | |
| Sen. Bryan King | | X |
| Sen. Terry Rice | X | |
| Sen. Greg Standridge | X | |
| Sen. Gary Stubblefield | X | |
| **Sen. Linda Collins-Smith, Vice Chair** | X | |
| **Sen. Jeremy Hutchinson, Chair** | X | |
| **TOTALS** | **7** | **1** |

# 91st General Assembly
# Regular Session, 2017
# Form for Testimony
# Before the
# JUDICIARY COMMITTEE - SENATE

**LOCATION: Room 171**                    **DATE: March 13, 2017**

**STAFF: Rebeca Haley/Judy Steelman**          **TIME: 09:00 AM**

| Bill/Resolution | Name | Interest Represented | Position (For/Against/Info) |
|---|---|---|---|
| SB40 | Mischa Martin, Director | DHS - Division of Children & Family Services | Informational |
| SB306 | Brian Welch, Director | Parent Council Program | For |
| HB1665 | Robert Coon | Impact Management Group | For |
| HB1175 | Robert Combs | CARE | Informational |
| SB600 | Lynn Foster | Citizen | For |
| SB656 | Mischa Martin, Director | DHS - Division of Children & Family Services | Informational |
| SB37 | Julie Steel | Moms Demand Action | Against |
| SB37 | Nancy Gibbons | Citizen | For |

**TESTIMONY SIGN IN DISCLAIMER:**

The names of persons appearing on this Sign-In sheet who did not provide testimony at the meeting have not been verified as to the listed person's attendance at the meeting, identify of the person signing the sheet, or position of the person as either for or against the issue discussed.

# JUDICIARY

## SIGN-IN SHEET FOR THOSE WISHING TO SPEAK
## BEFORE THE COMMITTEE

### PLEASE PRINT

DATE: 3/13

| BILL # | NAME and TITLE (If available, please leave business card) | ORGANIZATION or INTEREST REPRESENTED | FOR or AGAINST |
|---|---|---|---|
| SB 269 | Michelle Baker - Attorney / Deanna Munds Smith - Administrator | DFA | Against |
| SB 492 | Bob McMahan / Lori Fumpuris Prog. Coord. | APAA | (crossed out) INFO. |
| SB 600 | Lynn Foster | Citizens | For |
| SB 602 | Randy Thomason | Landlord Assn. of Ark | For |
| SB33 | Julie Steel | Moms Demand Action | Against |
| SB37 | Julie Steel | Moms Demand Action | Against |
| SB 37 | John Emmons | Citizen | FOR |
| SB444 | Colonel Bill Bryant | State Police | Against |
| SB585 | | | |
| SB660 | | | |
| | | | |
| | | | |
| | | | |
| | | | |

# MINUTES PACKET

# JUDICIARY COMMITTEE - HOUSE

# MARCH 16, 2017

# 91st General Assembly
# Regular Session, 2017
# Committee Minutes
# JUDICIARY COMMITTEE- HOUSE

**CHAIRS: Rep. Matthew J. Shepherd, Chair**          **COMMITTEE STAFF:**

**DATE:    03/16/2017 10:00:00 AM**          **LOCATION: Room 149**

## BILLS OR RESOLUTIONS CONSIDERED:

| Measure | Sponsor | Motion | Made By | Second By | Results |
|---|---|---|---|---|---|
| HB1665 | Vaught | Concur in Senate Amendment | Ballinger | | Carried-Voice Vote |
| HB1420 | C. Fite | Concur in Senate Amendment | C. Fite | | Carried-Voice Vote |
| HB1873 | L. Fite | Do Pass as Amended | L. Fite | | Carried-Voice Vote |
| SB223 | Rapert | Do Pass | Ballinger | | Carried-Voice Vote |
| HB1821 | Ballinger | Do Pass | Ballinger | | Carried-Voice Vote |
| HB1899 | Bentley | Do Pass | Ballinger | | Failed-Roll Call Vote 7-2-11 |
| HB1899 | Bentley | Expunge Vote by which Bill Failed | Ballinger | | Carried-Roll Call Vote 10-0-10 |
| HB1756 | Collins | Do Pass | D. Whitaker | | Carried-Voice Vote |
| HB1983 | Shepherd | Do Pass | Shepherd | | Carried-Voice Vote |
| SB15 | A. Clark | Do Pass | Ballinger | | Carried-Voice Vote |
| HB1986 | Ballinger | Do Pass | Ballinger | | Carried-Voice Vote |
| HB2248 | Gazaway | Do Pass | Gazaway | | Carried-Voice Vote |
| HB1798 | Blake | Special Order of Business Tuesday, March 21, 2017, 10:00 a.m. | Shepherd | | Carried-Voice Vote |
| HB2103 | V. Flowers | Special Order of Business Tuesday, March 21, 2017, 10:00 a.m. | Shepherd | | Carried-Voice Vote |
| HB2170 | V. Flowers | Special Order of Business Tuesday, March 21, 2017, 10:00 a.m. | Shepherd | | Carried-Voice Vote |
| HB1943 | C. Douglas | Adopt Amendment JNL261 | Blake | | Carried-Voice Vote |
| HB1943 | C.Douglas | Do Pass as Amended | D. Whitaker | | Carried-Voice Vote |
| HB1817 | C. Douglas | Adopt Amendment BPG547 | Tucker | | Carried-Voice Vote |
| HB1817 | C. Douglas | Do Pass as Amended | Tucker | | Carried-Voice Vote |
| SB491 | Maloch | Do Pass | Tucker | | Carried-Voice Vote |

| Measure | Sponsor | Motion | Made By | Second By | Results |
|---------|---------|--------|---------|-----------|---------|
| SB367 | B. King | Adopt Amendment BPG516 | Tucker | | Carried-Voice Vote |
| SB367 | B. King | Do Pass as Amended | C. Fite | | Carried-Voice Vote |
| SB550 | T. Garner | Adopt Amendment BPG552 | Ballinger | | Carried-Voice Vote |
| HB1629 | Tucker | | | | No Action Taken |
| HB1630 | Tucker | | | | No Action Taken |
| HB1268 | Murdock | | | | No Action Taken |
| SB113 | J. Hutchinson | | | | No Action Taken |
| HB1784 | Eaves | | | | No Action Taken |
| HB1797 | Leding | | | | No Action Taken |
| HB1837 | Brown | | | | No Action Taken |
| HB1842 | Johnson | | | | No Action Taken |
| HB1864 | Gates | | | | No Action Taken |
| SB102 | Flippo | | | | No Action Taken |
| HB1884 | Gazaway | | | | No Action Taken |
| HB1886 | Gazaway | | | | No Action Taken |
| HB1889 | Ballinger | | | | No Action Taken |
| HB1895 | Gates | | | | No Action Taken |
| HB1909 | Walker | | | | No Action Taken |
| HB1918 | Walker | | | | No Action Taken |
| HB2017 | Brown | | | | No Action Taken |
| HB2075 | Leding | | | | No Action Taken |
| HB2076 | Dotson | | | | No Action Taken |
| HB2083 | Petty | | | | No Action Taken |
| HB2112 | Walker | | | | No Action Taken |
| HB2118 | Womack | | | | No Action Taken |
| HB2119 | Womack | | | | No Action Taken |
| HB2121 | Womack | | | | No Action Taken |
| HB2168 | Collins | | | | No Action Taken |
| HB2199 | M. Hodges | | | | No Action Taken |
| HB2232 | Ballinger | | | | No Action Taken |
| HB2253 | Gazaway | | | | No Action Taken |
| HB2228 | Blake | | | | No Action Taken |
| HB2012 | Vaught | | | | No Action Taken |

| Measure | Sponsor | Motion | Made By | Second By | Results |
|---------|---------|--------|---------|-----------|---------|
| HB1994 | Pilkington | | | | No Action Taken |
| HB2088 | Leding | | | | No Action Taken |
| HB1827 | Della Rosa | | | | No Action Taken |
| HB1888 | Ballinger | | | | No Action Taken |
| HB1444 | Ballinger | | | | No Action Taken |
| HB1959 | Ballinger | | | | No Action Taken |
| HB2113 | Henderson | | | | No Action Taken |
| HB2116 | Holcomb | | | | No Action Taken |
| HB2202 | Tucker | | | | No Action Taken |
| HB2234 | Ballinger | | | | No Action Taken |
| SB37 | A. Clark | | | | No Action Taken |
| HB2131 | K. Ferguson | | | | No Action Taken |
| HB2266 | V. Flowers | | | | No Action Taken |
| HB2270 | V. Flowers | | | | No Action Taken |

**AGENDA (Revised 3/15/2017 @6:45 p.m.)**
**Added Bills & Moved HB1444 from Deferred Bills)**
**House Committee on Judiciary**
**91st General Assembly**
**Regular Session, 2017**

**Thursday, March 16, 2017**
**10:00 AM**
**Room 149, State Capitol**
**Little Rock, Arkansas**

Rep. Matthew J. Shepherd, Chair
Rep. Dwight Tosh, Vice-Chair
Rep. Jeremy Gillam
Rep. Douglas House
Rep. Charlene Fite
Rep. Bob Ballinger

Rep. David Whitaker
Rep. Rebecca Petty
Rep. Trevor Drown
Rep. Michelle Gray
Rep. Charles Blake
Rep. Clarke Tucker
Rep. Laurie Rushing

Rep. Lanny Fite
Rep. Milton Nicks, Jr.
Rep. Brandt Smith
Rep. John Maddox
Rep. Jimmy Gazaway
Rep. Carol Dalby
Rep. Sarah Capp

## CONCUR IN SENATE AMENDMENT

| Number | Sponsor | Subtitle |
|---|---|---|
| HB1420 | C. Fite | TO CREATE THE ARKANSAS DOMESTIC VIOLENCE SHELTER ACT; TO CREATE THE DOMESTIC VIOLENCE SHELTER FUND; AND TO ESTABLISH PROCEDURES FOR FUNDING DOMESTIC VIOLENCE SHELTERS. |
| HB1665 | Vaught | TO CREATE A CAUSE OF ACTION FOR UNAUTHORIZED ACCESS TO ANOTHER PERSON'S PROPERTY. |

## REGULAR AGENDA

| Number | Sponsor | Subtitle |
|---|---|---|
| HB1629 | Tucker | TO PROTECT VICTIMS OF DOMESTIC ABUSE AND STALKING; AND PROHIBITING A PERSON CONVICTED OF MISDEMEANOR DOMESTIC BATTERING OR STALKING FROM POSSESSING A FIREARM. |
| HB1630 | Tucker | TO PROTECT CHILDREN FROM UNATTENDED LOADED FIREARMS; AND TO CREATE THE OFFENSE OF NEGLIGENTLY ALLOWING ACCESS TO A FIREARM BY A CHILD. |
| HB1268 | Murdock | CONCERNING THE USE OF AN IGNITION INTERLOCK DEVICE. |
| SB113 | J. Hutchinson | TO REMOVE A DRIVER'S LICENSE SUSPENSION OR REVOCATION AS AN AVAILABLE PENALTY FOR OFFENSES NOT RELATED TO DRIVING A MOTOR VEHICLE. |
| HB1756 | Collins | CONCERNING THE OFFENSE OF LOITERING. |
| HB1784 | Eaves | CONCERNING THE QUALIFICATIONS TO BE A LAW ENFORCEMENT OFFICER. |
| HB1797 | Leding | TO AMEND THE ARKANSAS CIVIL RIGHTS ACT OF 1993. |
| HB1798 | Blake | AMENDING THE BURDEN OF PROOF REQUIRED DURING THE SENTENCING PHASE OF A TRIAL WHEN THE STATE SEEKS THE DEATH PENALTY. |
| HB1817 | C. Douglas | TO CREATE THE OFFENSE OF POSSESSION OF A FIREARM WHILE UNDER THE INFLUENCE OF ALCOHOL OR A CONTROLLED SUBSTANCE. |
| HB1821 | Ballinger | CONCERNING A PARTY IN AN ACTION FOR DECLARATORY RELIEF; AND TO DECLARE AN EMERGENCY. |
| HB1837 | Brown | CONCERNING POSSESSION OF A CONCEALED HANDGUN BY A CONCEALED HANDGUN LICENSEE; PERMITTING THE CONCEALED CARRY OF A HANDGUN BY A CONCEALED CARRY LICENSEE INTO A PUBLICALLY OWNED BUILDING OR FACILITY. |
| HB1842 | Johnson | CONCERNING THE FINES AND FEES ASSESSED TO A PERSON WHO IS INCARCERATED. |
| HB1864 | Gates | CONCERNING A MEMBER OF THE GENERAL ASSEMBLY AND THE SCOPE OF WHERE A MEMBER OF THE GENERAL ASSEMBLY MAY CARRY AND POSSESS A CONCEALED HANDGUN. |

**Notice: Silence your cell phones. Keep your personal conversations to a minimum. Observe restrictions designating areas as "*Members and Staff Only*"**

| HB1873 | L. Fite | TO AMEND THE OBLIGATIONS OF AN OPERATOR OF A VESSEL INVOLVED IN A COLLISION OR ACCIDENT; AND TO AMEND THE CRIMINAL PENALTIES. |
|--------|---------|------|
| SB102 | Flippo | TO CLARIFY THE LAW CONCERNING THE FINES, FEES, AND COSTS THAT MAY BE ASSESSED FOR A VIOLATION OF THE MANDATORY SEAT BELT USE LAW. |
| HB1884 | Gazaway | TO ADOPT THE UNIFORM UNSWORN FOREIGN DECLARATIONS ACT. |
| HB1886 | Gazaway | TO MAKE TECHNICAL CORRECTIONS TO TITLE 16 OF THE ARKANSAS CODE. |
| HB1889 | Ballinger | TO CREATE THE OFFENSE OF CARRYING A WEAPON IN A PROHIBITED PLACE; AND CONCERNING THE POSSESSION OF A HANDGUN. |
| HB1895 | Gates | CONCERNING THE CONCEALED CARRY OF A HANDGUN BY A CONCEALED CARRY LICENSEE INSIDE A COURTHOUSE. |
| HB1899 | Bentley | CONCERNING THE PROCUREMENT OF A LICENSE TO CARRY A CONCEALED HANDGUN BY A VICTIM OF DOMESTIC ABUSE. |
| HB1909 | Walker | CONCERNING THE TEMPORARY ABATEMENT OF THE REQUIREMENT OF A PERSON TO PAY COURT-ORDERED CIVIL PENALTIES, COSTS, FEES, FINES, OR RESTITUTION WHILE THAT PERSON IS INCARCERATED OR CONFINED TO A HOSPITAL. |
| HB1918 | Walker | CONCERNING PAROLE ELIGIBILITY FOR A PERSON SERVING A LIFE SENTENCE OR A SENTENCE IN EXCESS OF FORTY-FIVE YEARS. |
| HB1943 | C. Douglas | TO PROHIBIT THE AWARD OF ALIMONY TO PERSONS CONVICTED OF A DOMESTIC VIOLENCE OFFENSE. |
| HB1986 | Ballinger | CONCERNING THE OFFENSE OF INDECENT EXPOSURE. |
| HB2017 | Brown | CONCERNING THE FEE FOR VICTIM IMPACT PANEL ATTENDANCE. |
| HB2075 | Leding | TO PROHIBIT COMMERCIAL SURROGACY ARRANGEMENTS AND THE ENFORCEMENT OF SURROGACY ARRANGEMENTS. |
| HB2076 | Dotson | TO REDUCE THE FEE FOR A CONCEALED CARRY LICENSE; TO CREATE A LIFETIME CONCEALED CARRY LICENSE; AND CONCERNING THE FEES FOR A LICENSE TO CARRY A CONCEALED HANDGUN. |
| HB2083 | Petty | TO AMEND THE LAW CONCERNING CRIMINAL BACKGROUND CHECKS FOR A LONG-TERM CARE EMPLOYEE TO CLARIFY THAT EXPUNGED, PARDONED, OR OTHERWISE SEALED OFFENSES WILL NOT DISQUALIFY AN INDIVIDUAL FROM EMPLOYMENT IN A LONG-TERM CARE FACILITY. |
| HB2103 | V. Flowers | CONCERNING THE SENTENCES AVAILABLE FOR A CAPITAL OFFENSE. |
| HB2112 | Walker | CONCERNING A PERSON WHO FAILS TO APPEAR OR FAILS TO PAY A FINE; CONCERNING THE OFFENSE OF FAILURE TO APPEAR; AND CONCERNING COSTS, FINES, AND FEES ASSESSED TO A PERSON WHO IS INCARCERATED OR IN A HOSPITAL OR INPATIENT FACILITY. |
| HB2118 | Womack | CONCERNING THE CIVIL LIABILITY OF AN ENTITY THAT MAINTAINS A POLICY THAT PROHIBITS THE CARRYING OF A HANDGUN ON ITS PROPERTY. |
| HB2119 | Womack | CONCERNING THE CIVIL LIABILITY OF AN INSTITUTION OF HIGHER EDUCATION THAT MAINTAINS A POLICY THAT PROHIBITS THE CARRYING OF A HANDGUN ON ITS PROPERTY AND THE LIABILITY OF THE INSTITUTION'S GOVERNING BODY. |
| HB2121 | Womack | CONCERNING A CITIZEN'S RIGHT TO OBSERVE AND RECORD PUBLIC EVENTS. |
| HB2168 | Collins | CONCERNING THE POSSESSION OF A CONCEALED HANDGUN IN A PUBLIC UNIVERSITY, PUBLIC COLLEGE, OR COMMUNITY COLLEGE BUILDING; AND CONCERNING CONCEALED HANDGUNS. |
| HB2199 | M. Hodges | TO CLARIFY THE PURPOSE OF THE MINORITY BUSINESS ECONOMIC DEVELOPMENT ACT; AND TO AMEND THE REPORTING REQUIREMENTS AND PROVIDE FOR PENALTIES UNDER THE MINORITY BUSINESS ECONOMIC DEVELOPMENT ACT. |
| HB2232 | Ballinger | TO CREATE THE GOVERNMENT NONDISCRIMINATION ACT OF 2017; AND CONCERNING RELIGIOUS LIBERTY. |
| HB2253 | Gazaway | REVISED UNIFORM FIDUCIARY ACCESS TO DIGITAL ASSETS ACT. |
| SB367 | B. King | CONCERNING ACCOUNTING PRACTICES IN CIRCUIT COURT AND THE OFFICE OF A CIRCUIT COURT CLERK; AND TO CREATE THE CIRCUIT COURT ACCOUNTING AND FINE COLLECTION COMMITTEE. |
| HB2228 | Blake | CONCERNING THE INDEPENDENT INVESTIGATION OF DEATHS INVOLVING A POLICE |

| | | OFFICER. |
|---|---|---|
| HB2012 | Vaught | CONCERNING THE POSTING OF BOND TO RELEASE A PERSON FROM JAIL; AND CONCERNING THE POSTING OF BOND BY A MINOR TO RELEASE A PERSON FROM JAIL. |
| HB1994 | Pilkington | CONCERNING THE INTENDED PURPOSE OF THE CONCEALED HANDGUN LICENSING PROGRAM. |
| SB15 | A. Clark | TO AMEND PROVISIONS CONCERNING JUVENILE COURTS AND PROCEEDINGS. |
| SB223 | Rapert | TO AMEND THE STATUTES OF LIMITATION FOR FRAUDULENT INSURANCE ACTS. |
| SB491 | Maloch | TO CLARIFY THE LAW CONCERNING THE COLLECTION OF A SMALL ESTATE BY A DISTRIBUTEE; AND TO CLARIFY THE VALUE OF PROPERTY FOR THE PURPOSE OF COLLECTING A SMALL ESTATE. |
| SB550 | T. Garner | TO CREATE THE OFFENSE OF UNLAWFUL MASS PICKETING. |
| HB2088 | Leding | TO PROVIDE ENHANCED PENALTIES FOR A CRIMINAL OFFENSE COMMITTED BECAUSE OF THE VICTIM'S RACE, COLOR, RELIGION, ETHNICITY, ANCESTRY, NATIONAL ORIGIN, SEXUAL ORIENTATION, GENDER IDENTITY, OR DISABILITY. |
| HB1827 | Della Rosa | CONCERNING THE LICENSE FEES FOR A LICENSE TO CARRY A CONCEALED HANDGUN. |
| HB1888 | Ballinger | ESTABLISHING AN ENHANCED CERTIFICATION TO CARRY A HANDGUN; AND CONCERNING THE POSSESSION OF A HANDGUN. |
| HB1983 | Shepherd | CONCERNING THE PROCEDURE AND REQUIREMENTS FOR THE COMMENCEMENT OF CERTAIN CIVIL CLAIMS; AND CONCERNING INJUNCTIVE RELIEF. |
| HB1444 | Ballinger | TO REVISE CERTAIN EMINENT DOMAIN LAWS THAT ARISE OUT OF PROPERTY RIGHTS SECURED UNDER THE ARKANSAS CONSTITUTION, ARTICLE 2, § 22. |
| HB1959 | Ballinger | TO AMEND THE LAW CONCERNING ALIMONY SUPPORT. |
| HB2113 | Henderson | CONCERNING THE TESTING OF A FIREARM BY THE STATE CRIME LABORATORY. |
| HB2116 | Holcomb | TO PROTECT FREIGHT RAIL EMPLOYEES AND PUBLIC TRANSIT EMPLOYEES BY ENHANCING THE PENALTIES OF CERTAIN CRIMINAL OFFENSES. |
| HB2170 | V. Flowers | CONCERNING THE IMPOSITION OF THE DEATH PENALTY ON A DEFENDANT WITH A SERIOUS MENTAL ILLNESS. |
| HB2202 | Tucker | CONCERNING THE NEW BUSINESS RULE AND THE ABILITY OF A BUSINESS TO RECOVER LOST PROFITS IN LITIGATION. |
| HB2234 | Ballinger | TO REPEAL DOWER AND CURTESY RIGHTS; TO CREATE THE SURVIVING SPOUSE MARITAL SHARE. |
| SB37 | A. Clark | PERMITTING A CONCEALED CARRY LICENSEE TO POSSESS A CONCEALED HANDGUN IN HIS OR HER EMPLOYER'S PARKING LOT. |
| HB2131 | K. Ferguson | CONCERNING A SUSPENDED IMPOSITION OF SENTENCE; CONCERNING A CRIMINAL CONVICTION; AND CONCERNING SUSPENDING AN IMPOSITION OF SENTENCE WHEN A PERSON OWES RESTITUTION, |
| HB2248 | Gazaway | TO AMEND THE IMPLIED CONSENT LAW IN RELATION TO THE OFFENSE OF DRIVING OR BOATING WHILE INTOXICATED. |
| HB2266 | V. Flowers | TO ESTABLISH A UNIFORM STANDARD FOR DATA COLLECTION AMONG LAW ENFORCEMENT AGENCIES. |
| HB2270 | V. Flowers | CONCERNING BODY CAMERAS FOR LAW ENFORCEMENT OFFICERS; AND TO ESTABLISH INCENTIVES FOR THE USE OF BODY CAMERAS AND BODY CAMERA DATA STORAGE. |

## DEFERRED BILLS

| Number | Sponsor | Subtitle |
|---|---|---|
| HB1095 | Johnson | CONCERNING THE REQUIREMENTS FOR A CONCEALED HANDGUN LICENSE FOR A CURRENT OR FORMER MEMBER OF THE UNITED STATES ARMED FORCES. |
| HB1265 | Richey | CONCERNING THE POSSESSION AND CARRYING OF A CONCEALED OR UNCONCEALED HANDGUN; TO ESTABLISH A LICENSE TO CARRY AN UNCONCEALED HANDGUN; AND TO MAKE TECHNICAL CORRECTIONS. |
| HB1152 | Watson | CONCERNING THE ABILITY OF AN AUXILIARY LAW ENFORCEMENT OFFICER TO CARRY A CONCEALED HANDGUN AND TO BE EXEMPTED FROM THE LICENSING |

| | | REQUIREMENTS TO CARRY A CONCEALED HANDGUN. |
|---|---|---|
| HB1177 | Tucker | INCREASING THE AVAILABLE SENTENCES FOR CERTAIN SEX OFFENSES WHEN COMMITTED AGAINST A FAMILY OR HOUSEHOLD MEMBER. |
| HB1248 | J. Williams | TO CREATE AN EXEMPTION UNDER THE FREEDOM OF INFORMATION ACT OF 1967 CONCERNING CERTAIN LAW ENFORCEMENT INVESTIGATIVE RECORDS. |
| HB1433 | Baltz | TO PROHIBIT A REGISTERED SEX OFFENDER FROM LIVING NEAR A FACILITY WHERE A PERSON WITH A MEDICALLY DIAGNOSED MENTAL DISABILITY OR PHYSICAL DISABILITY RESIDES. |
| HB1759 | Dalby | TO MAKE LEGISLATIVE CORRECTIONS AND TO REPEAL OBSOLETE LAWS CONTAINED IN TITLE 27 OF THE ARKANSAS CODE. |
| HB1631 | Tucker | CONCERNING A WARRANTLESS ARREST FOR DOMESTIC ABUSE. |
| HB1173 | Tucker | TO AMEND AND MAKE CONSISTENT THE OFFENSES OF SEXUAL INDECENCY WITH A CHILD AND SEXUAL ASSAULT IN THE FOURTH DEGREE. |
| HB1055 | Hammer | TO AMEND THE DEFINITION OF "MARITAL PROPERTY" FOR PURPOSES OF DIVISION OF PROPERTY IN AN ACTION FOR DIVORCE. |
| HB1747 | D. Whitaker | CONCERNING PAROLE ELIGIBILITY OF A PERSON INCARCERATED IN THE DEPARTMENT OF CORRECTION. |
| HB1985 | Ballinger | CONCERNING FIREARM POSSESSION FOR A NONVIOLENT FEDERAL FELONY OFFENDER. |
| HB1713 | Lowery | TO ESTABLISH MURDER IN THE SECOND DEGREE AS A SEVENTY-PERCENT CRIME. |

**ATTENDANCE**

**91st General Assembly**
**Regular Session, 2017**

**JUDICIARY COMMITTEE- HOUSE**

**Thursday, March 16, 2017**

| MEMBERS | PRESENT | ABSENT |
|---|:---:|:---:|
| Rep. Bob Ballinger | X | |
| Rep. Charles Blake | X | |
| Rep. Sarah Capp | X | |
| Rep. Carol Dalby | X | |
| Rep. Trevor Drown | X | |
| Rep. Lanny Fite | X | |
| Rep. Charlene Fite | X | |
| Rep. Jimmy Gazaway | X | |
| Rep. Jeremy Gillam | | X |
| Rep. Michelle Gray | X | |
| Rep. Douglas House | X | |
| Rep. John Maddox | X | |
| Rep. Milton Nicks, Jr. | X | |
| Rep. Rebecca Petty | X | |
| Rep. Laurie Rushing | | X |
| Rep. Brandt Smith | X | |
| Rep. Clarke Tucker | X | |
| Rep. David Whitaker | X | |
| **Rep. Dwight Tosh, Vice Chair** | X | |
| **Rep. Matthew J. Shepherd, Chair** | X | |
| **TOTALS** | **18** | **2** |

## ROLL CALL

### 91st General Assembly
### Regular Session, 2017

### JUDICIARY COMMITTEE- HOUSE

### Thursday, March 16, 2017

**BILL #: HB1899**

**MOTION: Do Pass**

**RESULTS: Failed: 7-2-11**

| MEMBERS | AYE | NAY | NOT VOTING |
|---|---|---|---|
| Rep. Jeremy Gillam | | | X |
| Rep. Douglas House | X | | |
| Rep. Charlene Fite | | | X |
| Rep. Bob Ballinger | X | | |
| Rep. David Whitaker | | X | |
| Rep. Rebecca Petty | X | | |
| Rep. Trevor Drown | X | | |
| Rep. Michelle Gray | | | X |
| Rep. Charles Blake | | X | |
| Rep. Clarke Tucker | | | X |
| Rep. Laurie Rushing | | | X |
| Rep. Lanny Fite | X | | |
| Rep. Milton Nicks, Jr. | | | X |
| Rep. Brandt Smith | X | | |
| Rep. John Maddox | X | | |
| Rep. Jimmy Gazaway | | | X |
| Rep. Carol Dalby | | | X |
| Rep. Sarah Capp | | | X |
| Rep. Dwight Tosh, Vice Chair | | | X |
| Rep. Matthew J. Shepherd, Chair | | | X |
| TOTALS | 7 | 2 | 11 |

# ROLL CALL

## 91st General Assembly
## Regular Session, 2017

### JUDICIARY COMMITTEE- HOUSE

### Thursday, March 16, 2017

<u>**BILL #: HB1899**</u>

<u>**MOTION: Expunge the vote on which the bill failed**</u>

<u>**RESULTS: Passed: 10-0-10**</u>

| MEMBERS | AYE | NAY | NOT VOTING |
|---|---|---|---|
| Rep. Jeremy Gillam | | | X |
| Rep. Douglas House | X | | |
| Rep. Charlene Fite | | | X |
| Rep. Bob Ballinger | X | | |
| Rep. David Whitaker | | | X |
| Rep. Rebecca Petty | X | | |
| Rep. Trevor Drown | X | | |
| Rep. Michelle Gray | | | X |
| Rep. Charles Blake | | | X |
| Rep. Clarke Tucker | | | X |
| Rep. Laurie Rushing | | | X |
| Rep. Lanny Fite | X | | |
| Rep. Milton Nicks, Jr. | | | X |
| Rep. Brandt Smith | X | | |
| Rep. John Maddox | X | | |
| Rep. Jimmy Gazaway | X | | |
| Rep. Carol Dalby | X | | |
| Rep. Sarah Capp | | | X |
| Rep. Dwight Tosh, Vice Chair | | | X |
| Rep. Matthew J. Shepherd, Chair | X | | |
| TOTALS | 10 | 0 | 10 |

# 91st General Assembly

## Regular Session, 2017

## Form for Testimony

### Before the

## JUDICIARY COMMITTEE- HOUSE

**LOCATION: Room 149**                          **DATE: March 16, 2017**

**STAFF:**                                      **TIME: 10:00 AM**

| Bill/Resolution | Name | Interest Represented | Position (For/Against/Info) |
|---|---|---|---|
| HB1873 | April Wheeler | Citizen | For |
| SB223 | Ronnie James | Arkansas Insurance Department | For |
| SB223 | Suzanne Tipton | Arkansas Insurance Department | For |
| HB1899 | Anthony Roulette | National Rifle Assosation | For |
| HB1983 | Ava Roberts | Arkansas Bankers Association | For |
| SB15 | Heather Findley | Division of Children and Family Services | For |
| HB1986 | Jeff Rosenzweig | Arkansas Criminal Defense Lawyers Association | Against |
| HB1817 | Nate Bell | Former Member of the House of Representatives | For |
| HB1817 | Kermit Channell | Arkansas State Crime Lab | Informational |
| HB367 | Benny Magness | Arkansas Board of Corrections | For |

**TESTIMONY SIGN IN DISCLAIMER:**

The names of persons appearing on this Sign-In sheet who did not provide testimony at the meeting have not been verified as to the listed person's attendance at the meeting, identify of the person signing the sheet, or position of the person as either for or against the issue discussed.

# JUDICIARY

## SIGN-IN SHEET FOR THOSE WISHING TO SPEAK
## BEFORE THE COMMITTEE

### PLEASE PRINT                    DATE: 3/16

| BILL # | NAME and TITLE (If available, please leave business card) | ORGANIZATION or INTEREST REPRESENTED | FOR or AGAINST |
|---|---|---|---|
| 1784 | Mike Godfrey | Ark. Sheriffs Assoc | Against |
| SB113 | Col. Bill Bryant | State Police | Against |
| HB1889 | | | |
| HB2076 | | | |
| HB1994 | | | |
| HB1798 | Paul Calvert | Life, Liberty, and the Pursuit of Happiness | For |
| HB1444 | John Wilkerson | Arkansas Municipal League | Against |
| HB1268 | Teresa Belew | AR Impaired Driving Prevention TASK FORCE   MADD | Against |
| HB 1798 | Bob McMahan Pror. Coord. | APAA | Against |
| HB 1798 | Bryan Chesshir PA 9th W | APAA | Against |
| HB 1918 | Bob McMahan Pror. Coord. | APAA | Against |
| HB2232 | BREEAN WALAS | LGBT Arkansas | Against |
| HB2075 | Patrice Wike MCS | | For |
| HB1891 | Anthony Rouletti | NLA | For |
| SB 37 | Paul Calvert | | Against |

# JUDICIARY

## SIGN-IN SHEET FOR THOSE WISHING TO SPEAK
## BEFORE THE COMMITTEE

### PLEASE PRINT                DATE: 3/16

| BILL # | NAME and TITLE (If available, please leave business card) | ORGANIZATION or INTEREST REPRESENTED | FOR or AGAINST |
|---|---|---|---|
| HB 986 | Jeff Rosenzweig | Ark Assn. Crim Defense Lawyers | Against |
| SB 850 | | | |
| HB 253 | Craig S. Lair | Arkansas Trust & Estate Council | For |
| HB 1817 | Kermit Channell | State Crime Lab | Informational |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |