IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

ANIMAL LEAGUE DEFENSE FUND;
ANIMAL EQUALITY; CENTER FOR
BIOLOGICAL DIVERSITY; and FOOD
CHAIN WORKERS ALLIANCE                                          PLAINTIFFS

v.                              4:19cv00442 JM

PECO FOODS, INC.                                                DEFENDANTS

## ORDER

This case—a pre-enforcement challenge to the constitutionality of Ark. Code Ann. §16-118-113— is back after remand by the Eighth Circuit Court of Appeals. Animal League Defense Fund ("ALDF"), Animal Equality ("AE"), Center for Biological Diversity ("CBD"), and Food Chain Workers Alliance ("FCWA") allege that that the statute violates their constitutional rights to free speech and equal protection under the law are seeking a injunctive and declaratory relief. This Court previously granted the motions to dismiss filed by Defendants Peco Foods, Inc. ("Peco Foods"), and Jonathon and Deann Vaught, d/b/a Prayer Creek Farm ("the Vaughts") on the basis that Plaintiffs failed to establish Article III standing. (ECF No. 51)  In the absence of standing, and thus subject matter jurisdiction, the Court did not address Defendants' arguments regarding failure to state a claim pursuant to  Rule 12(b)(6) or ripeness.  Plaintiffs appealed, and the Eighth Circuit reversed the Court's determination as to standing and also held that the case was ripe. *Animal Legal Def. Fund v. Vaught*, 8 F.4th 714 (8th Cir. 2021) (ECF No. 63).

Following remand, the Vaughts filed a stipulation that they would not bring an enforcement action under the statute. They have been dismissed by agreement of Plaintiffs. Peco Foods has not responded to respond to a request by Plaintiffs to waive its rights under the statute. The case has been remanded for consideration of the undecided 12(b)(6) merits challenge.

Plaintiffs and Peco Foods filed supplemental briefs on this issue following the remand. (ECF Nos. 71, 75). The Court heard oral arguments on March 30, 2023.

## Legal Standard

To survive a 12(b)(6) motion to dismiss, a complaint must contain "a short and plain statement of the claim that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

## The Complaint

Plaintiffs filed their complaint against Peco Foods—a company that operates chicken slaughterhouses, processing plants and hatcheries—as a pre-enforcement challenge to the constitutionality of Ark. Code Ann. §16-118-113. The statute, which was sponsored by pig farmer and former defendant DeAnn Vaught while she was in the Arkansas legislature, is titled "Civil cause of action for unauthorized access to property," though Plaintiffs refer to it as the Arkansas Ag-Gag statute.

The statute provides that "a person who knowingly gains access to a nonpublic area of a commercial property and engages in an act that exceeds the person's authority to enter the nonpublic area is liable to the owner or operator of the commercial property for any damages sustained by the owner or operator." An "act that exceeds a person's authority" is defined to include "an employee who knowingly enters a nonpublic area of commercial property . . . and without authorization subsequently (1) captures or removes the employer's data, paper, records, or any other documents and uses the information . . . in a manner that damages the employer; (2)

records images or sound occurring within the commercial property and uses the recording in a manner that damages the employer; (3) places on the commercial property an unattended camera or electronic surveillance device" and uses it for an unlawful purpose; "(4) conspires in an organized theft of items belonging to the employer; or (5) commits an act that substantially interferes with the ownership or possession of the commercial property." Ark. Code Ann. § 16-118-113(b). Significantly, the law is only enforceable by civil action brought by an owner or operator of commercial property who has been damaged by the described trespass.  In cases where "compensatory damages cannot be quantified" the statute provides for an award of damages not to exceed $5,000 per day there has been a violation, as determined by the Court's discretion. The statute also specifically excludes its application to a state agency and a state funded institute of higher education. Ark. Code Ann. 16-118-113(g).

      Taking the allegations of the complaint as true, the law was passed to target activist employment, such as undercover investigators, who use cellphone videos to show the conditions of an operation to the public which "can destroy any employer, any farmer." (ECF No. 1 at ¶ 102). [1]  As set forth more fully in the order of dismissal (ECF No. 51) and the Eighth Circuit's opinion (ECF No. 71), Plaintiffs allege that they have plans to investigate Peco Foods' facilities by sending in undercover investigators to obtain information that they would then use to demonstrate the harms of industrial agriculture. Plaintiffs allege that ALDF and AE "asked Peco Foods to waive its right to enforce the Arkansas Ag-Gag law against them for any investigation"

---

[1] The only other reported case involving this statute to date involved allegations of wrongful acquisition and use of confidential and proprietary information when an employee downloaded his employer's files and went to work for a competitor. *Timber Automation, LLC v. FiberPro, LLC*, No. 6:20-CV-06076, 2020 WL 5878211 (W.D. Ark. Oct. 2, 2020).

of their facilities because the law is unconstitutional, but "Peco Foods did not do so." (ECF No. 1 at ¶ 52). They allege that this refusal has resulted in an unconstitutional chilling of their right to free speech in violation of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

In their prayer for relief, Plaintiffs seek a declaration that the statute is unconstitutional on its face and as applied to Plaintiffs. Alternatively, they request a declaration that the statute cannot constitutionally be used to punish the activities described in sections (c)(1), (2), (3), and (5) or to punish any "individual engaging in equivalent activities." Plaintiffs also seek a permanent injunction prohibiting Peco Foods and others in participation with them from enforcing the statute.

## Analysis

In their motion, Peco Foods argues that without alleging state action, Plaintiffs have failed to state a claim for a pre-enforcement constitutional challenge to Ark. Code Ann. 16-118-113. Plaintiffs argue that there is state action. Additionally, Plaintiffs argue that even without state action, they have stated a claim for injunctive relief and a claim pursuant to the Declaratory Judgment Act, 28 U.S.C.A. § 2201.

A. State Action

In its motion to dismiss, Peco Foods argues that Plaintiffs have failed to state a claim for constitutional violations against it because it is a private party, not a state actor, and Plaintiffs have cited no statutory authority, such as § 1983, giving them a private cause of action. Peco Foods relies on *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921 (2019) to argue that the state-action issue is a "threshold" question, as "[t]he text and original meaning of [the First

4

and Fourteenth] Amendments, as well as this Court's longstanding precedents, establish that "the Free Speech Clause prohibits only *governmental* abridgment of speech. The Free Speech Clause does not prohibit *private* abridgment of speech." *Id.* at 1930, 1928 (emphasis in original). It also relies on the earlier decision of *Cohen v. Cowles Media Co.*, 501 U.S. 663, 668 (1991) for the proposition that without state action to trigger the constitutional protections, "then the First Amendment has no bearing on this case." Absent state action Peco Farms argues that Plaintiffs have failed to state a claim and their complaint should be dismissed.

In their initial brief, Plaintiffs argue that no statutory vehicle is needed for the court to issue injunctions to protect conditional rights. (ECF No. 28) They quote *Bell v. Hood*, 327 U.S. 678, 684 (1946)—"it is established practice for this Court to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution[]—and to the additional cases in cited in footnote 4 to support that assertion. They also rely on *Davis v. Passman*, 442 U.S. 228, (1979): ". . . we presume that justiciable constitutional rights are to be enforced through the courts. And, unless such rights are to become merely precatory, the class of those litigants who allege that their own constitutional rights have been violated, and who at the same time have no effective means other than the judiciary to enforce these rights, must be able to invoke the existing jurisdiction of the courts for the protection of their justiciable constitutional rights."*Id.*at 241-242.

However, these cases cited by Plaintiffs all involve state actors. In *Bell*, the issue was "whether federal courts can grant money recovery for damages said to have been suffered as a result of *federal officers* violating the Fourth and Fifth Amendments." *Bell* at 678 (emphasis added). Of the cases cited in *Bell*'s footnote 4, those involved lawsuits against the United States

5

Secretary of War, the port of Seattle, state officials of Oregon, the city of Indianapolis, and the city of Mitchell, South Dakota, respectively.[2]

In their supplemental briefing following remand, Plaintiffs agree with Peco Foods that the First Amendment only applies to state action.[3] They argue that the Eighth Circuit's determination that Plaintiffs have sufficiently alleged an injury-in-fact is a binding determination that Peco Foods was engaged in state action because "the two issues are one-and-the-same." (ECF No. 75 at 2). Plaintiffs assume that for the Eighth Circuit to have found an injury-in-fact, that injury could only exist if Peco Foods were engaged in state action.

However, a determination that Plaintiffs have established the elements of Article III standing does not foreclose a challenge for failure to state a claim. "'The standing inquiry is merely a threshold inquiry'; it does not present the 'higher hurdles' of pleading a claim to relief on the merits under Federal Rule of Civil Procedure 12(b)(6)." *Huizenga v. Indep. Sch. Dist. No. 11*, 44 F.4th 806, 811 (8th Cir. 2022) (quoting *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459 (8th Cir. 2010)). *See also Turkish Coal. of Am., Inc. v. Bruininks*, 678 F.3d 617, 623 (8th Cir. 2012) (finding standing but dismissing First Amendment claim under Rule 12(b)(6)). So while "[i]n most cases . . . a plaintiff's standing tracks his cause of action," Plaintiffs cannot rely on the Eighth Circuit's injury-in-fact determination to assume that the necessary element of state action exists in this case. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009) (citations omitted).

---

[2] *Philadelphia Co. v. Stimson*, 223 U.S. 605 (1912); *Hays v. Port of Seattle*, 251 U.S. 233 (1920); *Pennoyer v. McConnaughy*, 140 U.S. 1 (1891); and *City Ry. Co. v. Citizens' St. R. Co.*, 166 U.S. 557 (1897).
[3] Plaintiffs have not amended their complaint to allege state action or to include a claim pursuant to §1983.

Plaintiffs interpret the decision of the United States Supreme Court in the first *Whole Women's Health* appeal as supporting a finding of state action in the present case. Plaintiffs argue that "[t]he Court stated that because . . . the private citizen had 'filed an affidavit stating that he has no present intention to enforce the law,' he could not be said to wield state power through the potential to 'enforce the Texas law' and thus he could not be enjoined." (ECF No. 75 at 21) (quoting *Whole Woman's Health v. Jackson*, 141 S. Ct. 2494, 2495 (2021)). But the Court's short opinion in that instance does not reference "state power." In asking "whether the named defendants in this lawsuit can or will seek to enforce the Texas law against the applicants in a manner that might permit our intervention," the Court simply noted that Mr. Dickson, the sole private citizen sued, had no current intention to bring an action to enforce the law. In the next appeal, Mr. Dickson was dismissed for lack of standing in the absence of an injury fairly traceable to his conduct in light of his sworn declaration that he would not enforce it. *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 537 (2021). The Court does not read this language as a determination that absent his disavowal, Mr. Dickson would have been engaged in state action.

In addition to arguing that the Eighth Circuit has already found state action, Plaintiffs also rely on a number of cases to argue that the very existence of a state statute constitutes state action. *Paul v. Watchtower Bible & Tract Soc. of New York, Inc.*, 819 F.2d 875 (9th Cir. 1987) was a case between two private parties in which the court held that "[s]tate laws whether statutory or common law, including tort rules, constitute state action." *Id.* at 880. However, the constitutional claim in *Watchtower* was raised as a "substantive defense[]" to the state tort claims asserted by the plaintiff, not as an offensive action. Likewise *New York Times Co. v. Sullivan,* 376 U.S. 254 (1964) was an action between private parties in which the constitutional claims were raised as a

7

defense to an action for libel. In *Sullivan*, the Court stated, "The test is not the form in which state power has been applied [referring to common law or statutory] but, whatever the form, whether such power has in fact *been exercised*." 376 U.S. at 265 (emphasis added; internal citation omitted).

Plaintiffs also cite *C.B.C. Distribution & Mktg., Inc. v. Major League Baseball Advanced Media, L.P.*, 505 F.3d 818 (8th Cir. 2007), another dispute between private parties. The Eighth Circuit held that "the state action necessary for first amendment protection exists because the [state law] right-of-publicity claim exists only insofar as the courts *enforce* state-created obligations[.]" *Id.* at 823 (emphasis added). Again, the constitutional issue was raised in defense to a state tort claim after a plaintiff sought enforcement of a state claim.

In oral argument to this Court, Plaintiffs emphasized their reliance on *Cohen v. Cowles Media Co.*, 501 U.S. 663 (1991) to support their position that state action exists when a state law *would be* enforced in state court in an action between private parties. The Court disagrees with this expansive interpretation of *Cohen*. In *Cohen*, the plaintiff had filed suit against newspaper publishers for breach of contract and fraud. The defendants argued defensively that the First Amendment barred the lawsuit. To the surprise of the parties, when the Minnesota Supreme Court rejected the plaintiff's breach of contract claim it interjected into the litigation the question of whether the plaintiff could have brought a promissory estoppel action instead; it then decided that "*enforcement* of the promissory estoppel theory would violate the defendants' First Amendment rights." *Id.* at 668 (emphasis added). The United States Supreme Court granted certiorari "to consider the First Amendment implications" of the case. *Id.* at 668. Citing *Sullivan* among other cases, the Supreme Court reached the same conclusion about state action: "[o]ur

8

cases teach that *the application of state rules of law in state courts* in a manner alleged to restrict First Amendment freedoms constitutes 'state action' under the Fourteenth Amendment." *Id.* at 668 (emphasis added).  Plaintiffs here focus on the Court's subjunctive language that the "legal obligations *would be* enforced through the official power of the Minnesota courts" and "that is enough to constitute "state action' for purposes of the Fourteenth Amendment." *Ibid. (*emphasis added). This language cannot be taken out of context.   In *Cohen,* an action between private parties, the plaintiff sued the defendants on a state claim and the defendants raised the First Amendment as a defense.  It was state court action until the United States Supreme Court granted cert to weigh in on the First Amendment implications.  This Court does not read *Cohen* as supporting Plaintiffs' argument that they have a right to bring an offensive action against a private party based on the existence of a state law that Peco Foods is not attempting to enforce though the courts.

In the present case, the Eighth Circuit has found that Plaintiffs have established an injury fairly traceable to Peco Foods because it did not, when asked, disavow its intention to enforce the statute.  The Court, however, does not find that standing determination to equate to a finding of state action. Peco Foods has not filed an action to enforce the statute.  At most it has remained silent in the face of Plaintiffs' request that it speak up to affirmatively to state that it will not bring an action under the challenged statute.  On these facts, the Court is not persuaded by the authority cited by Plaintiffs that state action exists in this case.

The Court notes that a different conclusion was reached by the United States District Court, M.D. North Carolina in a case that is very nearly identical this one, *People for the Ethical Treatment of Animals, Inc. v. Stein*, 466 F. Supp. 3d 547 (M.D.N.C. 2020), *aff'd in part, rev'd in*

9

*part sub nom. People for the Ethical Treatment of Animals, Inc. v. N. Carolina Farm Bureau Fed'n, Inc.*, 60 F.4th 815 (4th Cir. 2023). In fact, Ark. Code Ann. §16-118-113 was modeled after the North Carolina law[4] challenged by PETA, ALDF and others in that case. After being reversed on the standing issue[5], the district court ruled on cross motions for summary judgment that the challenged provisions violated the First Amendment. In its opinion, the district court stated that "while the Act operates in the private sphere, it is state action to the extent the State has identified speech (or in some cases, conduct which can include speech) it wishes to allow to be proscribed and has empowered private parties to enforce the prohibition." *Id.* at 565 (citing *Cohen* at 501 U.S. at 668). However, the district court went on to note that "[i]n the present case, moreover, Plaintiffs have strategically targeted a State Entity that would enforce the Act through State actors," namely the attorney general of North Carolina and the chancellor of the University of North Carolina-Chapel Hill. No private actors were named in that action. On appeal, the Fourth Circuit did not address the issue of state action being present by the mere existence of a state statute. As noted earlier, the Arkansas statute specifically excludes its application to state agencies and state institutions of higher education, which limited Plaintiffs' potential target defendants.

B. Equitable Relief

In addition to their argument about state action, Plaintiffs argue that they do not need statutory authority because courts have inherent authority to grant equitable relief. (ECF No. 75 at 15). They rely on language from *United States v. Detroit Timber & Lumber Co.*, 200 U.S. 321

---

[4] North Carolina General Statute § 99A-2
[5] *People for the Ethical Treatment of Animals, Inc. v. Stein*, 737 F. App'x 122 (4th Cir. 2018).

(1906) for the general proposition that equitable powers exist in the courts unless they have been expressly limited by Congress.  *Id*. at 339 ("The principles of equity exist independently of, and anterior to, all congressional legislation[.]") That case involving a transfer of title to a good faith purchaser "was one in which the Court made application of general principles of equity in a suit for the recovery of money brought by the United States." *United States v. Stutsman Cnty. Implement Co.*, 274 F.2d 733, 736 (8th Cir. 1960). It does not provide authority for finding that a claim has been adequately pleaded on these facts.

Plaintiffs also cite to a case from a district court in Texas, pulling out the language that "equitable remedies need not be rooted in an act of Congress." *United States v. Texas*, 566 F. Supp. 3d 605, 651 (W.D. Tex.), *cert. granted before judgment,* 142 S. Ct. 14 (2021).  *Texas* was an action brought by the United States against the State of Texas seeking a declaratory judgment that the Texas S.B.8 anti-abortion law, was unconstitutional and seeking a preliminary and permanent injunction against its enforcement by state officials and by private parties who were authorized to bring suit.  That case addressed some of the issues in the present action, where a legislature has attempted to limit or completely close off judicial review of a state statute.  The issue in that case was whether the United States, not private parties, had standing to file the action absent a statutory mechanism like § 1983. Here, of course, standing has already been established. Nevertheless, critical to the court's determination that the United States did have standing to bring the action for equitable relief was the absence of any legal remedies.  The court noted that one of the provisions of S.B.8 purported to "prohibit[] defendants from raising the defense that they believed the law to be unconstitutional"[6] which lead to the conclusion that "[w]hen no other

---

[6] Tex. Health & Safety Code § 171.208(e)(2).

11

remedy is available, by statutory right or otherwise provided by law, traditional principles of equity remain to ensure that fundamental rights are protected." *Id. at* 646. Ark. Code Ann. § 16-118-113, however, does not to limit the rights of persons sued to raise the unconstitutionality of the statute as an affirmative defense.

Plaintiff also relies on *Davis v. Passman*, 442 U.S. 228 (1979) in which the Supreme Court "allowed a *Bivens* action to redress a violation of the equal protection component of the Due Process Clause of the Fifth Amendment." *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 129 S. Ct. 1937, 1948, 173 L. Ed. 2d 868 (2009). In *Davis,* a former staff member sued a United States Congressman for sex discrimination. The plaintiff was in a class of federal employees who was "not in the competitive service" and therefore the remedial provision of Title VII were not available to her. *Id.* at 247. As a result, the Court found that a class of litigants alleging their constitutional rights had been violated and who had "no effective means other than the judiciary to enforce these rights," was able to "invoke the existing jurisdiction of the courts for the protection of their justiciable constitutional rights." *Id.* at 241–42. That decision has been called into question by the Supreme Court and "expanding the *Bivens* remedy is now considered a 'disfavored' judicial activity." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1848 (2017). Furthermore, that was an action against a federal employee who had allegedly committed a constitutional violation, not against a private party whose only "action" was not to disavow an intention to file a lawsuit under a state statute alleged to be unconstitutional.

In oral argument before this Court, Plaintiffs relied heavily on footnote two in *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010) for the proposition that there is an implied private right of action for courts to enjoin unconstitutional conduct. That is another case

brought against a government entity: "The parties agree that the Board is part of the Government for constitutional purposes and that its members are Officers of the United States who exercise significant authority pursuant to the laws of the United States." *Id.* at 486 (internal quotations and citations omitted).

In short, while Plaintiffs accurately quote the language in these cases about the courts' inherent equitable authority, they do not put it in context. They have not brought to the Court's attention any cases on point to support the application of the court's inherent equitable authority in the context of one private party suing another for a constitutional violation in the form of a state statute that, were it invoked would be enforced in state court.

C. Declaratory Judgment

The Declaratory Judgment Act ("DJA")provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C.A. § 2201. Both parties acknowledge that the DJA "does not create any new substantive right but rather creates a procedure for adjudicating existing rights." *W. Cas. & Sur. Co. v. Herman*, 405 F.2d 121, 124 (8th Cir. 1968).

Peco Foods argues that since there is not an existing right for Plaintiffs to determine and protect their free speech rights against private actors who have not invoked state action, the procedural mechanism of the DJA is not available to Plaintiffs.

Plaintiff argues that the DJA is available to provide a remedy for Plaintiffs' alleged First Amendment violations. In support of their argument, Plaintiffs cite to two cases. The first is

13

*Shelby Cnty., Ala. v. Lynch*, 799 F.3d 1173, 1183 (D.C. Cir. 2015). There the court found that "[t]he grants of jurisdiction in 28 U.S.C. § 1331 and in the Declaratory Judgment Act, 28 U.S.C. § 2201, provide adequate authorization for any attack on the VRA's constitutionality," and "so Congress had no need to create a new cause of action." However, this was an action brought by a one state actor against another—Shelby County, Alabama against the United States Attorney General, and the issue was whether Section 14(b) of the VRA created a new cause of action. This case does not help Plaintiffs establish the right to bring a constitutional challenge to a state statute against a private party through a declaratory judgment action.

Plaintiff also cites to *Planned Parenthood of Houston & Se. Tex. v. Sanchez*, 403 F.3d 324 (5th Cir. 2005), specifically to footnote 47, as also suggesting that the Declaratory Judgment Act supplied a cause of action. *Sanchez* was brought against a government official, the Texas Commissioner of Health, over challenged state legislation that heightened Title X eligibility requirements. The Fifth Circuit Court of Appeals held that the plaintiffs had an implied right of action to assert a preemption claim seeking injunctive and declaratory relief, even absent an explicit statutory claim. *Id.* at 334. As Plaintiffs have not brought a preemption claim, this case does not support Plaintiffs' argument. As to the cases cited in footnote 47, the Fifth Circuit mentioned that the Declaratory Judgment Act was "another possible source" for the providers' right of action, but the two cases is cited for this possibility involved suits against state actors.[7] *Id.*

After consideration of these arguments, the Court finds that Plaintiffs have not stated an existing right for which the DJA could provide a remedy. The Court has struggled with this

---

[7] *First Nat'l Bank of E. Ark.,* 907 F.2d at 776 (suit against Commissioner of the Arkansas Insurance Department in a preemption claim); *Doe v. Pickett,* 480 F.Supp. 1218, 1223 (S.D.W.Va.1979) (action against the West Virginia Department of Health finding that state cannot impose parental consent requirement on use of Title X funds).

question, since the Eighth Circuit has determined that the facts alleged by Plaintiffs presents an "actual case or controversy."[8] But absent any precedent that allows a plaintiff to proceed offensively against a private actor for First Amendment violations, this Court is not going find an existing right on these facts.

### Conclusion

For these reasons, Defendant Pecos Foods's Motion to Dismiss (Doc. Nos. 18 and 71) is GRANTED.

IT IS SO ORDERED this 31st day of March, 2023.

_____
UNITED STATES DISTRICT JUDGE

---

[8] "The phrase "case of actual controversy" in § 2201 "refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *Maytag Corp. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 687 F.3d 1076, 1081 (8th Cir. 2012) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007)).